## CHARLES R. KATE v. BLANCHE KATE.[1]

June 22, 1951.

No. 35,486.

[1]Reported in 48 N. W. (2d) 551.

*Coursolle, Preus & Maag* and *Haugland & Abdo,* for appellant.
*Covell, Root & Bachelder,* for respondent.

LORING, CHIEF JUSTICE.

This is a proceeding brought by Blanche Kate under the provisions of M. S. A. 518.23 to revise a divorce decree so as to increase alimony due her from plaintiff, Charles R. Kate. Defendant's petition for increased alimony came on for hearing before the district court and was, in all respects, denied. This appeal is taken upon the ground that the district court abused its discretion in issuing the order wherein defendant's petition was denied.

The divorce decree which defendant seeks to have revised was granted February 14, 1939. Sometime prior thereto, plaintiff had commenced an action against defendant for divorce, charging her with selfishness and gross extravagance in financial matters. Defendant interposed an answer and cross bill denying plaintiff's allegations and asking for separate maintenance. Defendant having amended her answer and cross bill so as to seek divorce on grounds of cruel and inhuman treatment, the parties entered into a stipulation governing "all matters pertaining to alimony, both temporary and permanent, support, property rights of every kind, nature and description, attorneys fees and costs." This stipulation was made a part of the court's decree to govern the rights of the parties with reference to matters stipulated.

The stipulation referred to above provided as follows:

(1) Defendant was awarded the following items:

*a.* A homestead acquired at a cost of approximately $22,000, but subject to a $10,340 mortgage.

*b.* All household furnishings and personal property located on the homestead, except 11 personal items and heirlooms belonging to plaintiff.

c. A 1938 Studebaker automobile.

d. $6,000 cash.

e. Insurance policies amounting to $15,000, payable to defendant in the event she survived plaintiff and as security for alimony.

f. $350 per month alimony for the life of defendant or plaintiff, whichever is shorter, or until defendant remarried.

(2) Plaintiff agreed to pay $500 per year premiums on the $15,000 life insurance.

(3) Plaintiff agreed to pay the following debts, then mostly in arrears:

a. Payments due on account of the principal of the first mortgage upon the homestead due on September 1, 1938, and March 1, 1939.

b. Interest payments due upon the mortgage on the above dates.

c. All back taxes upon the homestead and all taxes payable in the year 1939.

d. Dental and medical bills and hospital expenses due and those to become due on a forthcoming operation.

e. Attorney's fees amounting to $1,000.

f. All outstanding accounts amounting to $1,958.94.

It is stated in appellant's brief that:

"At the time of the divorce in February, 1939, respondent was heavily in debt by several thousands of dollars and had been so for 'a good many years before.' He owed the home office and 'everybody in Minneapolis.' He had no savings and did not get out of debt or start saving until late in the year 1941—* * *."

Plaintiff is the state sales manager for two insurance companies. His net income after taxes was $15,294.28 in 1938; $11,902.94 in 1939; and $18,096.05 in 1949. His income tax returns for the years 1938 through 1949 show an average yearly income of $17,586. At the present time, plaintiff owns assets acquired at a cost of approximately $95,000. He is married and has one child.

The property which defendant obtained at the time of her divorce from plaintiff is set forth in the stipulation already recited. Since

that time, defendant alleges that she has received the following: (1) $1,100 from her father to be applied against delinquent taxes; (2) $5,150 from her mother's estate; (3) $7,119.08 from her father's estate.

Defendant is presently receiving $350 per month alimony in accordance with her divorce decree, and her assets at the time of hearing on her petition amounted to $11,734.

At the time of the hearing, defendant was 61 years of age and plaintiff 63 years of age.

The principal point which defendant seeks to make in her petition is that changes in state and federal income tax law and the rising cost of living have combined to reduce the purchasing power of the alimony which she was originally awarded. Beyond that, her principal effort has been directed at showing a decline in her own fortune and a marked increase in the wealth and income of plaintiff.

■ A petition of this kind should be entertained with great caution and revision granted only upon clear proof of facts showing that the changed circumstances of the parties render the proposed modification equitable. Haskell v. Haskell, 119 Minn. 484, 138 N. W. 787; McKey v. McKey, 228 Minn. 28, 36 N. W. (2d) 17; 2 Dunnell, Dig. & Supp. § 2805, and cases cited.

■ In Smith v. Smith, 77 Minn. 67, 68, 79 N. W. 648, this court stated:

"* * * A court should be very slow, under any circumstances to revise or alter a former decree, and the application for a modification of an allowance should not be granted unless it appears that the changed circumstances of the parties render the modification necessary."

■ Such petitions are addressed to the sound judicial discretion of the trial court, and on appeal this court will not reverse except for abuse of such discretion.[2] Although a court has the

[2]Warren v. Warren, 116 Minn. 458, 133 N. W. 1009; Haskell v. Haskell, 119 Minn. 484, 138 N. W. 787; Plankers v. Plankers, 178 Minn. 31, 225

power to revise even those decrees which are founded upon an award stipulated by the parties,[3] consideration of the fact that an original award was based upon a stipulation should make a court more reluctant to order a revision than it would otherwise be.

Although a stipulation of the parties becomes the direction of the court and, in theory, the determination of the court once it is embodied in the decree, and although, like any decree, it is subject to revision, we would close our eyes to what is obvious on the record if we were to presume that, aside from the stipulation, defendant here would have fared so well by the court's own independent determination of her rights.[4] Our courts subject stipulations of this kind to careful and searching scrutiny, to the end that they may not be conducive to the procurement of divorce and to assure that they are likewise reasonably fair and just,[5] but it is nevertheless unrealistic to assume that the award made in accordance with such a stipulation fixes the standard of living to which the wife is entitled.

In the present case, plaintiff appears to have dropped his own complaint in the divorce proceeding; paid out over $20,000 in

N. W. 913; Vassar v. Vassar, 204 Minn. 326, 283 N. W. 483 (by implication).

[3]Warren v. Warren, 116 Minn. 458, 133 N. W. 1009; Randall v. Randall, 181 Minn. 18, 231 N. W. 413; Wilcox v. Wilcox, 222 Minn. 279, 24 N. W. (2d) 237.

[4]In the original divorce proceeding, plaintiff withdrew his own complaint, agreed to give defendant property and money amounting to about $18,000, to assume debts considerably in excess of $3,000, to pay $4,200 a year alimony to defendant and $500 a year premiums on insurance in which she was beneficiary. At the time, plaintiff was heavily in debt and had only a limited amount of property, while his net yearly income was approximately $15,000. Plaintiff's undisputed testimony is that his net worth was on the minus side at the time of his divorce. Considering his net worth and income at the time of his divorce, defendant received a most generous settlement. Compare awards made in Potter v. Potter, 224 Minn. 29, 27 N. W. (2d) 784; Baker v. Baker, 224 Minn. 117, 28 N. W. (2d) 164; Hempel v. Hempel, 225 Minn. 287, 30 N. W. (2d) 594; and Swanson v. Swanson, 233 Minn. 354, 46 N. W. (2d) 878.

[5]Warner v. Warner, 219 Minn. 59, 17 N. W. (2d) 58.

money and property; and agreed to pay alimony and insurance premiums in the amount of $4,700 per year as consideration for defendant's promise to—

"release, remise and forever discharge the plaintiff from all property claims of every kind, nature and description, and [to accept the settlement agreed upon] * * * in full discharge of any and all interest in and to plaintiff's property of whatsoever nature and wheresoever situated."

With reference to the above stipulation, the trial court made the following statement in its memorandum, made part of its order, denying defendant's petition:

"* * * From an examination of the files and proceedings in this matter it appears without doubt that at the time the stipulation was entered into, both parties were advised by fully competent counsel; that by the wording of the stipulation and otherwise it was unquestionably their intention to settle all matters concerning property rights and alimony on a permanent basis, and that both parties proceeded in reliance thereon."

■ Even if we were to give the stipulation no effect whatsoever, we would be obliged to recognize that the alimony awarded in 1939 was fixed by a bargain and not by an original judicial determination of the amount to which defendant was then entitled. If defendant wishes to default on her bargain, she may not at the same time seek to use it as a measure of her present rights. If the alimony which she is presently receiving is adequate, considering all the factors governing an original award, then there is no occasion to modify the award merely because the alimony that she bargained for and received in 1939 gave her a better standard of living then than it does today. The circumstances of the parties may have changed materially, and yet, if defendant drove a hard bargain in her original agreement for a property settlement and alimony, she may still be receiving all that a court would be re-

quired to award her if it were considering the matter originally.[6] In such a case, there is no abuse of discretion if the trial court determines that no revision of the decree is necessary.

■ With reference to changes in the relative wealth of the parties, very little need be said, except that defendant, if anything, has proved too much. She is a single woman with no dependents. Since her divorce she has spent an average of $526.19 per month on an alimony income of $350 per month—150 percent of her income. As a result of this rate of spending, defendant has run through about $69,458 since her divorce in 1939. During the same period of time, since his divorce from defendant, plaintiff's circumstances have steadily improved. He started with limited property and heavy debts, and, although he has supported a wife and child in addition to paying $350 a month alimony to defendant and $500 a year insurance premiums on her behalf, he now has assets amounting to approximately $95,000.

The evidence as a whole, and particularly defendant's own evidence, clearly demonstrated that such disparity of wealth as exists between these parties is due principally to plaintiff's industry and thrift on the one hand and to defendant's mismanagement and gross extravagance on the other. In such a case, any equality of circumstances that might be judicially established from time to time is bound to prove ephemeral. Our courts exist for a poor purpose if they must penalize thrift and industry and put a premium on extravagance and mismanagement in a vain effort to equalize the fortunes of these parties. In at least two opinions of this court, there is language which indicates that we should not revise alimony awards where the change of circumstances is the result of the petitioner's own intentional acts[7] or where an extravagant wife seeks to share

[6] "* * * upon an application for a change of alimony, the wife is entitled to receive so much, and only so much, as she would reasonably have been entitled to receive from her husband had the change in his financial condition come immediately before original award." Haskell v. Haskell, 119 Minn. 484, 488, 138 N. W. 787, 789.

[7] Haskell v. Haskell, 119 Minn. 484, 488, 138 N. W. 787, 789; McKey v. McKey, 228 Minn. 28, 34, 36 N. W. (2d) 17, 21.

in the fruits of her former husband's industry and thrift.[8]

■ Since a court's discretion in fixing the amount of alimony to be awarded in any case must be guided in part by concern for the future welfare of all the parties involved,[9] it was proper for the trial court in the present case to consider the fact that plaintiff is 63 years of age; that he has passed the peak of his earning capacity; that his earnings are not likely to continue at the present rate for many more years; and that he will need some reserve to continue paying alimony to defendant during his declining years. Defendant has shown a complete incapacity and/or disinclination to save money herself or to guard against the day when plaintiff may no longer be able to continue alimony payments at the present rate. It is therefore in her own interest that plaintiff be allowed to accumulate the reserve which will enable him to continue these payments.

In light of all the circumstances, we think that a revision of defendant's alimony award is not only unnecessary but actually undesirable. The trial court clearly did not abuse its discretion.

■ Defendant has assigned as error the refusal of the trial court to grant a continuance for the purpose of allowing her to take depositions in Omaha, Nebraska, which, it was alleged, would show that plaintiff's real income was greater than his tax returns disclose. The rule in this state is that the granting of a continuance of a cause is a matter lying in the discretion of the trial court, and its action will not be reversed on appeal except for a clear abuse of discretion. Lehman v. Lehman, 216 Minn. 538, 13 N. W. (2d) 604; 1 Dunnell, Dig. & Supp. § 1710, and cases cited. In the present case, it clearly appears that defendant did not exercise due diligence in attempting to secure the evidence now sought. In such case, her motion was properly denied. See, 1 Dunnell, Dig. § 1715, and numerous cases cited.

Affirmed.

---

[8]Warner v. Warner, 219 Minn. 59, 79, 17 N. W. (2d) 58, 68.

[9]Krusemark v. Krusemark, 232 Minn. 416, 46 N. W. (2d) 647.