ANNA MAE KIESOW v. THEODORE C. KIESOW.

133 N. W. (2d) 652.

March 5, 1965—No. 39,385.

*Friedman & Friedman,* for appellant.
*Kempe & Murphy,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the District Court of Dakota County amending a decree for divorce with respect to the amount of alimony and support money required of defendant and with respect to the title to some real estate.

Plaintiff and defendant were married on July 25, 1933. Five children were born as issue of this marriage, namely, Joan Margaret, born May 30, 1936; Carol Ann, born February 15, 1938; William Charles, born December 18, 1943; Marilyn Joyce, born February 15, 1946; and Jean Marie, born October 18, 1950.

On July 16, 1954, plaintiff-wife filed suit for divorce against defendant. Defendant answered and cross-claimed for divorce. The parties thereafter entered into a stipulation for settlement of property rights, custody of the children, and support and alimony. Based thereon, the answer and cross-claim were withdrawn, and on January 30, 1956, a default divorce decree was entered pursuant to the order of the Honorable William C. Christianson. The decree provided that plaintiff should have custody of the children and that defendant was to pay the sum of $185 per month for support of the children, to "continue until the children attain their majority or pending further order of the Court." Defendant was required to pay the sum of $50 per month as alimony, and plaintiff was awarded the furniture and household furnishings of the parties and the right to use the legal residence of the parties, which was described as lot 26 of block 33, Spring Park, Dakota County.

During their marriage, the parties had acquired two lots described as lots 25 and 26 of block 33, Spring Park, Dakota County. Lot 26 was held by them as joint tenants. The title to lot 25 was in defendant. With respect to the homestead, the decree provided:

"* * * plaintiff shall have the exclusive use, possession and enjoyment of the said premises to the exclusion of the defendant; that if the defendant predeceases the plaintiff, then and in that event his interest shall pass to and become the property of the children in equal shares. Neither plaintiff nor defendant, during their lifetime, shall have the right to transfer or dispose of his or her interest in such property nor to commence any action in partition because of the ownership of such interest in said property."

Even though it later appeared that part of the sidewalk used as entrance to the homestead and part of a driveway is located upon lot 25, no mention of lot 25 is made in the stipulation or divorce decree.

In addition to the above, defendant was required to maintain in full force and effect an insurance policy or policies upon his life in the face value of $6,000, in which the children of the parties were the principal beneficiaries, until such time as the youngest child attained her majority, and he was also required to maintain Blue Cross and Blue Shield hospital and medical contracts for the benefit of the children.

In October 1957 one of the children had become emancipated by marriage. Defendant thereupon moved to reduce the monthly support payments. Thereupon plaintiff moved to amend the divorce decree by increasing the support payments for the children to $210 per month and by adding lot 25 to lot 26 in the original decree and requiring defendant to pay one-half of the real estate taxes and assessments thereon. Affidavits were submitted by both parties in support of their respective motions, plaintiff alleging that defendant's income and salary had increased substantially and he disputing this claim. Plaintiff admitted that her oldest child was married and no longer at home. She alleged that she had been assessed $237.30 for street repairs and that her real estate taxes had been substantially increased for the year 1957. Judge Christianson, who had originally heard the case and issued the

divorce decree, heard these motions and on June 12, 1958, issued two orders, one denying plaintiff's motion and the other granting defendant's motion by reducing the support for the children from $185 to $148, which represented a proportionate reduction based on the emancipation of the one child. He allowed plaintiff $60 attorneys' fees. In his memorandum denying plaintiff's motion, the judge, among other things, said:

"* * * In light of all the circumstances coming to the court's attention, it seems that the provisions made for the support of the wife and the children, and the provisions made with respect to the division of property, were fair, equitable and just in view of the income and the circumstances of the husband. No such change has taken place in the circumstances of the plaintiff or the defendant as to justify the increase she seeks in the support of her four minor children now living with her. Nor, in view of all the circumstances, is there adequate justification for requiring the defendant to pay one-half of all taxes and assessments which will become due against the house where plaintiff resides with the children. It must be remembered that there has been no substantial increase in the income of defendant since the divorce. The wife, however, has one child less at home for which she must provide support out of what she receives from her husband. In view of this, the court feels that it is well justified in reducing by one-fifth, or $37.00, the amount to be paid by the husband each month as support for such children."

About 4 years later, on June 6, 1962, plaintiff again obtained an order to show cause why a motion should not be granted amending the divorce decree. In that motion she again asked to have lot 25 added to lot 26 and that the title be given to her free and clear of any claim on the part of defendant. She asked to have the support of the children increased to $15 per week per child.

The motion came on for hearing before the Honorable R. C. Nelsen. In addition to the affidavits of the parties, a full hearing was had in which testimony was offered and received. Thereafter, on September 28, 1962, Judge Nelsen made an order amending the divorce decree by requiring defendant to pay the cost of tuition and books for a college education for William Charles, one of the children of the par-

ties. His order is silent as to the balance of the motion and did not allow fees and costs to plaintiff for the reason, as stated in a memorandum, that "it seems to the Court that it is possible that the payment of the foregoing might have been voluntarily arranged without any amendment of the decree."

Judge Nelsen came to an untimely death in an automobile accident on October 5, 1963. The Honorable John B. Friedrich was appointed in his place. Thereafter, on October 25, 1963, plaintiff again obtained an order to show cause why a motion should not be granted amending the divorce decree so as to increase *alimony*[1] and support money for the children and so as to make such disposition and award of lot 25 as would be just and proper in the premises. This motion was heard on the affidavits of the parties on November 29, 1963, and oral testimony was again taken showing the financial condition of the parties and their living requirements.

On January 2, 1964, Judge Friedrich made an order amending the divorce decree by requiring defendant to pay the sum of $150 for the support of the children, a second child having reached his majority by that time. He also required defendant to pay the sum of $75 per month alimony. With respect to the real estate of the parties, he ordered that title to both lots 25 and 26 be placed in the name of plaintiff and defendant as tenants in common, subject to the following conditions:

"That as long as the plaintiff shall live she shall have the right to occupy said premises and to take the rents therefrom and that said plaintiff shall pay all expenses for maintenance and upkeep and shall be liable for the taxes and insurance therefor."

He required defendant to pay $50 attorneys' fees and $10 costs. This appeal is from the order of Judge Friedrich.

1. Divorce jurisdiction is statutory, and the district court has no power not delegated to it by statute.[2]

2. The trial court's authority to amend a divorce decree with re-

---

[1] The prior motions had not requested an increase in alimony.

[2] See, Ostrander v. Ostrander, 190 Minn. 547, 252 N. W. 449; Sivertsen v. Sivertsen, 198 Minn. 207, 269 N. W. 413.

spect to alimony or support money is found in Minn. St. 518.64, which, as far as material here, reads:

"After an order or decree for alimony or support money, temporary or permanent, * * * the court may from time to time, on petition of either of the parties revise and alter such order or decree respecting the amount of such alimony, or support money, and the payment thereof, * * *."

3. The applicable rules respecting the exercise of the authority granted by this statutory provision are well stated in Mark v. Mark, 248 Minn. 446, 449, 80 N. W. (2d) 621, 624, where we said:

"A petition to modify the alimony provisions of the divorce decree is addressed to the sound discretion of the court, and, although its discretionary power of modification is to be exercised with great caution and only upon clear proof of facts showing that the circumstances of the parties are markedly different from those in which they were when the decree was rendered, its decision will be reversed only for an abuse of discretion and not simply because as a court of review we would have arrived at a contrary result had we heard the matter de novo. Whether a trial court has used a sound discretion in exercising its broad statutory powers (M. S. A. 518.64) to revise the alimony fixed by a final decree depends upon whether the record reasonably and clearly supports a finding that the circumstances of the parties have so materially changed since the divorce that modification is equitable."

Over the years we have been reluctant to interfere with the trial court's discretion in amending or refusing to amend a divorce decree, particularly with respect to support for children.[3] However, the court's authority does have some limitations.

4. An order denying a motion to increase or reduce alimony or

---

[3]See, for instance, Plankers v. Plankers, 178 Minn. 31, 225 N. W. 913; McKey v. McKey, 228 Minn. 28, 36 N. W. (2d) 17; Kate v. Kate, 234 Minn. 402, 48 N. W. (2d) 551; Botkin v. Botkin, 247 Minn. 25, 77 N. W. (2d) 172; Senn v. Senn, 254 Minn. 294, 95 N. W. (2d) 27; Druck v. Druck, 258 Minn. 114, 103 N. W. (2d) 123; Larkin v. Larkin, 261 Minn. 414, 113 N. W. (2d) 75; Michalson v. Michalson, 263 Minn. 356, 116 N. W. (2d) 545; 6 Dunnell, Dig. (3 ed.) § 2805.

support money or granting it is an appealable order.[4] The order, being appealable, becomes final upon the expiration of the time for appeal, and the facts litigated and determined therein, after a hearing, are not open to relitigation on a subsequent motion, at least in the absence of fraud or some exceptional circumstance.[5]

In Plankers v. Plankers, 173 Minn. 464, 217 N. W. 488, a divorce was granted on November 29, 1926. The following June the defendant made a motion for modification of the decree so as to change custody of the child of the marriage and abrogate the provisions for alimony. At the hearing, the parties agreed upon a change in the decree, and pursuant thereto an order was made on July 2, 1927. Controversies resulted from a default in payment of alimony, and other hearings were had, but plaintiff finally procured an order to show cause why defendant should not be punished for contempt and defendant, an order to show cause why the amounts of alimony and support money should not be reduced, much the same as we have here. A hearing was had on both orders on September 13, 1927. Plaintiff's application was dismissed, and the court heard and considered whether defendant's income was sufficient to enable him to pay the alimony and allowance theretofore ordered. The court made an order, and an appeal followed. One of the questions was whether the court could go back beyond the order made on July 2, 1927, in its determination of a change of circumstances. We said (173 Minn. 466, 217 N. W. 488):

"The order refusing to reduce the alimony is appealable. * * * However, appellant is mistaken as to the scope of the matters which could enter into the court's decision. It should be clear that the motion for such an order cannot serve to review matters determined by the judgment or present new evidence which might have been presented at the trial so as to call for a different or modified judgment. * * * A substantial change in the situation of the parties subsequent to the judgment alone justifies a modification in a divorce decree both as to alimony and as to the custody of children. * * *

[4]Haskell v. Haskell, 119 Minn. 484, 138 N. W. 787.
[5]See, for instance, Johnson v. Johnson, 243 Minn. 403, 68 N. W. (2d) 398.

"Defendant made an application for a modification in both respects in June, 1927. A hearing was had and an order made July 2, 1927, whereby, by consent of both parties, the custody of the child was awarded a third party. The motion, in so far as it asked that all alimony to plaintiff cease, was denied; * * *. There was no appeal from that order, and it was appealable. Instead, within two months defendant again moved for relief from all alimony or its reduction, resulting in this order now under review. It is no more proper upon this last hearing to consider the facts involved or which could have been presented on the hearing resulting in the order of July 2 than those before the court or obtainable at the trial which culminated in the judgment of November 29, 1926. Hence the inquiry to which the court below was limited was whether or not there had been such a change in the situation of the parties since July 2, 1927, as to warrant any relief from the alimony * * * then awarded."

Similar results have been reached by courts in other jurisdictions. In Annotation, 18 A. L. R. (2d) 18, the author says:

"Where there have been one or more previous decisions on motions for modification of a decree, the question whether there has been a substantial change in the circumstances of the parties is determined with respect to the period commencing with the date of the most recent order on a motion for a modification and not with respect to the time since the original decree was entered."

In Hudson v. Hudson, 8 Wash. (2d) 114, 116, 111 P. (2d) 573, 574, the Washington court, citing our decision in Plankers v. Plankers, *supra,* said:

"The order made, preceding the one which is now before us, not having been appealed from, is *res judicata,* unless there has been, since that order was entered, a material change in the circumstances of the parties."

In the later case of Heuchan v. Heuchan, 38 Wash. (2d) 207, 215, 228 P. (2d) 470, 475, 22 A. L. R. (2d) 1410, the Washington court, while adhering to the above statement in the Hudson case, said:

"* * * [O]nly under the most exceptional circumstances should a

party to this type of litigation be entitled to urge as a material change of circumstances any condition or situation that could and should have been brought to the attention of the court at the hearing on a prior petition for modification. * * *

"Whether this be based on the doctrine of *res judicata* * * * or on the equitable doctrine of laches (the failure to take advantage of an opportunity to secure relief), or on the proposition that a court cannot be taken over by one set of litigants for the continued readjudication and reconsideration of their affairs, we are convinced that sound public policy requires such a holding. The test in each case should be: Could and should the facts now relied upon as establishing a change in the circumstances have been presented to the court in the previous hearing?"

See, also, Montgomery v. Montgomery, 275 Ala. 364, 155 So. (2d) 317; Sims v. Sims, 34 Hawaii 237; Snyder v. Snyder, 219 Cal. 80, 25 P. (2d) 403; Blank v. Blank, 55 Ohio App. 388, 9 N. E. (2d) 868.

We have held in other types of cases that an order made in determining a motion after a full hearing has been had on a controverted question of fact, and which is appealable, is binding upon the parties in a subsequent action or motion and conclusive upon the point passed upon. Halvorsen v. Orinoco Min. Co. 89 Minn. 470, 95 N. W. 320; Nelson v. Auman, 221 Minn. 46, 20 N. W. (2d) 702; 12 Dunnell, Dig. (3 ed.) § 6510.

While it may be that the doctrine of res judicata is not applied with the same degree of finality in a matter involving the amendment of a divorce decree as in some other actions, since support for children has always been treated more leniently than most other things, we think the rule here and elsewhere is and ought to be that, unless there is something approaching fraud in concealment of property or other exceptional circumstances, the decision on such a motion ought to be final. Parties should not be subject to harassment, at the whim of a divorced spouse, by successive motions involving fact issues once determined. When fact issues are fully and fairly determined at a hearing where both parties have had their day in court, the determination should be final.

5. The change in circumstances that will justify modification of a divorce decree respecting support for children of the parties is so exhaustively annotated in 89 A. L. R. (2d) 11 that it would seem futile to discuss it further here. It is obvious that both with respect to the support of children and alimony[6] the court may take into consideration a variety of factors and is not limited to a consideration only of the increased income of the parties. See, for instance, Larkin v. Larkin, 261 Minn. 414, 113 N. W. (2d) 75; Mark v. Mark, 248 Minn. 446, 80 N. W. (2d) 621; Botkin v. Botkin, 247 Minn. 25, 77 N. W. (2d) 172; Kate v. Kate, 234 Minn. 402, 48 N. W. (2d) 551. It is for this reason that this court is reluctant to reverse the trial court's determination on this issue unless the evidence clearly shows that there has been an abuse of discretion.

In the case now before us there is evidence of additional requirements by the former wife and some increase in the income of the husband. While the increase between the time of Judge Nelsen's order and the order involved here is not large, we take judicial notice of the fact that another of the children will have attained his majority as of December 1964 and defendant will be relieved of maintenance for that child.

6. The authority of the court to require payment of maintenance for children is now found in Minn. St. 518.57, which reads as follows:

"Upon a decree of divorce or annulment, the court may make such further order as it deems just and proper concerning the maintenance of the minor children as is provided by section 518.17, and for the maintenance of any child of the parties *as defined in this act,* as support money, and may make the same a lien or charge upon the property of the parties to such action, or either of them, either at the time of the entry of such judgment or by subsequent order upon proper application therefor." (Italics supplied.)

A child is defined in § 518.54, subd. 2, as follows:

---

[6] For circumstances justifying change in alimony, see Annotation, 18 A. L. R. (2d) 13.

" 'Child' means an individual under 21 years of age, or an individual who, by reason of his physical or mental condition, is unable to support himself."

There is no proof in this case, nor any claim as far as is shown by the record, that any of the children of the parties is physically or mentally deficient or unable to support himself when he reaches his majority. It follows that in the absence of such proof the court's authority to require maintenance terminates upon the child's attaining majority.

Only two of the children, therefore, are still minors, and the full payment to be made by defendant, including alimony and support, under the present order will not be more onerous than it was before the amendment. In view of the fact that the two remaining children are advancing in age and undoubtedly require more maintenance,[7] and there has been a showing of some additional requirements of plaintiff, we are persuaded to let the award stand, even though it may have been unjustified if it were based upon the increased income alone.

7. While plaintiff's first two motions heard by Judge Christianson and Judge Nelsen did not request an amendment to the divorce decree so as to increase alimony, the facts upon which either an increase in support money or alimony must rest were fully litigated in the hearings on both those motions. It might be argued that, inasmuch as an increase in alimony was not requested, the court was permitted to go back to the original decree to ascertain whether there had been a change in circumstances in so far as alimony is concerned, but we think that the rule is and ought to be that, inasmuch as the fact issues were litigated, plaintiff is bound by those determinations as much as if she had requested an increase in alimony and support money in the prior motions.

8. In addition to amending the original decree as to alimony and

---

[7]It is generally held that, where the cost of supporting children has increased, an increase in support money may be justified if the father has the ability to pay more. See, Annotation, 89 A. L. R. (2d) 11, 61; Toebe v. Toebe, 225 Minn. 323, 30 N. W. (2d) 585; Fruen v. Fruen, 228 Minn. 391, 37 N. W. (2d) 417.

support money, the trial court amended it with respect to the title to the real estate owned by the parties. In In re Petition of Wipper, 176 Minn. 206, 222 N. W. 922, and Anich v. Anich, 217 Minn. 259, 14 N. W. (2d) 289, we held that, where the issue as to the right to real estate is litigated, a judgment in a divorce action after the time for appealing has expired is conclusive and cannot be modified thereafter. In the Wipper case we said (176 Minn. 209, 222 N. W. 923):

"* * * [T]he judgment in the divorce action, so far as it affects the property rights of the parties as between each other, is mutually binding upon them, notwithstanding any failure on the part of either to make a full presentation of his case by the necessary allegations and proofs, to assert and protect his rights, whatever they were."

And in the Anich case we said (217 Minn. 263, 14 N. W. [2d] 291):

"* * * If aggrieved by the disposition of the property, defendant's remedy was by motion for a new trial or by appeal from the judgment. He permitted the time to appeal from the judgment to expire and then served his order to show cause, seeking an amendment of the decree. Having failed to avail himself of the procedure for reconsideration of the issue of ownership of the property, the judgment is final and conclusive."

In Hafner v. Hafner, 237 Minn. 424, 54 N. W. (2d) 854, we held by a divided court that, where a divorce decree is based upon a stipulation, the decree is a consent decree to the extent of the stipulation, which may be later modified for fraud or mistake. The consent-decree theory as applied in that case was criticized in a note in 37 Minn. L. Rev. 395.

Whatever the law may have been prior to 1951, statutes relating to alimony, support money, and division of property in divorce and annulment actions were recodified by L. 1951, c. 551. This included the power of the court to alter or change orders or decrees of divorce. Minn. St. 518.64. The act expressly excluded cases in which a judgment in divorce or annulment had been entered prior to the effective date of the act. § 518.67. The divorce in the Hafner case was granted prior to the passage of this act, so was not affected by it. Added to our

former statutes, we find the following in L. 1951, c. 551, § 11 (codified as Minn. St. 518.64):

"* * * Except for an award of the right of occupancy of the homestead, *all divisions of real* and personal *property* provided by Sections 5 and 6 of this act [codified as §§ 518.58 and 518.59][8] *shall be final,* and subject only to the power of the court to impose a lien or charge thereon at any time while such property, or subsequently acquired property, is owned by the parties or either of them, for the payment of alimony or support money, or to sequester the property as is provided by Section 518.24, Minnesota Statutes of 1949." (Italics supplied.)

The present case is governed by this statutory provision, and under it the court was clearly without authority to change the division of the real property or the title thereto after the original divorce had been entered and the time for appealing therefrom had expired, at least as to lot 26.

9. As to lot 25, no mention was made of it either in the stipulation of the parties or the divorce decree. Its omission may have been due to an oversight or it may have been intentional. We have no way

---

[8]Section 518.58 reads: "Upon a divorce for any cause, or upon an annulment, the court may make such disposition of the property of the parties acquired during coverture as shall appear just and equitable, having regard to the nature and determination of the issues in the case, the amount of alimony or support money, if any, awarded in the judgment, the manner by which said property was acquired and the persons paying or supplying the consideration therefor, the charges or liens imposed thereon to secure payment of alimony or support money, and all the facts and circumstances of the case."

Section 518.59 reads: "Upon a divorce for any cause, the court may also award to the wife the household goods and furniture of the parties, whether or not the same was acquired during coverture, and may also order and decree to the wife such part of the real and personal estate of the husband not acquired during coverture, exclusive of future earnings and income, and not exceeding in present value one-half thereof, as it deems just and reasonable, having regard to the amount of property decreed to the wife under sections 518.56 and 518.58, the amount of alimony and support money awarded, if any, the character and situation of the parties, the nature and determination of the issues, and all other circumstances of the case."

of knowing. If there had been nothing more than the decree, it would have been permissible to hold that, no disposition having been made of it in the divorce decree, it could be disposed of in a later motion for amendment of the decree; but the difficulty is that on the original motion to amend the decree, heard by Judge Christianson, plaintiff's motion to amend the decree so as to include lot 25 as part of the homestead was denied. In the court's memorandum it was expressly stated that "the provisions made with respect to the division of property, were fair, equitable and just in view of the income and the circumstances of the husband." Again, in the subsequent motion heard by Judge Nelsen, plaintiff sought to have the decree amended by adding a provision awarding her title to lot 25 free and clear of any claim on the part of defendant. While Judge Nelsen made no specific order concerning this request, his order of September 28, 1962, grants plaintiff relief only to the extent of requiring defendant to pay some of the costs for a college education for William. It must be assumed that failure to grant the relief requested was a denial thereof. It follows that twice the request of plaintiff to include lot 25 has been litigated and denied, and it would seem that, inasmuch as the decision on the motion is as conclusive as the decision on the original trial, the matter has now been put to rest, and the statute should apply to lot 25 as much as if it had been covered by the original decree.

Defendant offered during the hearing on the motion now before us to add half of lot 25 to lot 26 so that the part actually used as part of the homestead would become part thereof. It would seem that the sensible and fair thing to do would now be to accept this offer that part of lot 25 could be added to the homestead and held by the parties as joint tenants under the provisions of the original decree. Plaintiff would then have the use of all of lot 26 and that part of lot 25 which has actually been used as part of the home. Beyond that, the court was without power to make any change in the disposition of the property theretofore made by the decree and the motions already submitted.

10. The only other questions raised by defendant relate to the necessity for making findings of fact upon a motion of this kind. It would seem that this type of motion is governed by Rule 52.01, Rules

of Civil Procedure, which provides: "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion * * *." While it is better practice in a matter of this kind to make findings of fact so that this court on appeal can have some understanding of the basis of the decision, it probably is not technically required. In any event, in this case it is not sufficient to justify a reversal. See Barbaras v. Barbaras, 88 Minn. 105, 92 N. W. 522, as to the rule under our former statute.

11. Defendant also complains about the allowance of attorneys' fees. The allowance of attorneys' fees is a matter that is left so much in the discretion of the trial court that we would not be inclined to interfere with the small amounts made here. See, Gerard v. Gerard, 216 Minn. 543, 13 N. W. (2d) 606. The main consideration is whether the wife acted in good faith. See, Druck v. Druck, 258 Minn. 114, 103 N. W. (2d) 123.

While there is some question as to whether a wife should be allowed attorneys' fees in making successive motions such as we have here—all involving substantially the same questions—we feel that there is sufficient showing of good faith on her part that she should be allowed some attorneys' fees here too. Plaintiff is allowed $150 as attorneys' fees on this appeal.

The decision of the trial court is accordingly affirmed in part and reversed in part as shown above.

No allowance has been made herein for expenses on this appeal. Defendant is technically entitled to tax costs and disbursements. No costs will be allowed to either party, and, if defendant taxes his disbursements, an allowance will be made to plaintiff in an amount sufficient to offset the amount thereof.

Affirmed in part; reversed in part.