**In re the Marriage of Barbara A. RICHTER, Petitioner, Respondent,**

v.

**Kevin J. RICHTER, Appellant.**

No. C4–00–1656.

Court of Appeals of Minnesota.

May 1, 2001.

---

Michael L. Gjesdahl, Gjesdahl & Deitz, PLLP, Fargo, ND, (for respondent).

John Remington Graham, Quebec Canada, (for appellant).

Considered and decided by PETERSON, Presiding Judge, SHUMAKER, Judge, and PORITSKY, Judge.*

## OPINION

SHUMAKER, Judge.

The district court set a May 8, 2000 "final hearing" to dissolve the marriage of appellant-husband Kevin Richter and respondent-wife Barbara Richter. Husband moved to dismiss the proceeding, alleging, among other things, that marriage was a contract and that the dissolution statutes violated the provisions in the United States and Minnesota Constitutions prohibiting statutes that interfere with the right to contract. Husband's motion stated it would be heard on May 8. The district court dismissed husband's motion, stating the hearing set for May 8 was cancelled. On May 8, after denying husband's request for a continuance, husband withdrew from the courtroom, and the district court took testimony from wife. The district court later dissolved the marriage and denied husband's posttrial motion.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Husband appeals. Because the district court correctly rejected husband's challenge to the dissolution and did not abuse its discretion in denying a continuance, we affirm.

## FACTS

The parties married in 1983 and wife petitioned to dissolve the marriage in September 1999. Husband opposed wife's attempts to dissolve the marriage. In early April 2000, the district court set a "final hearing" for May 8 and granted the motion of husband's attorney to withdraw. On April 25, husband, pro se, moved to dismiss the proceeding, alleging, among other things, that (a) there was no irretrievable breakdown of the marriage; (b) marriage is a contract; and (c) the statutes allowing dissolution of a marriage infringed on the constitutional right to contract. Husband's motion stated it would be heard on May 8.

On April 26, the district court, sua sponte, dismissed husband's motion in an order stating that the hearing set for May 8 was cancelled. Two days later, wife's attorney sent husband a letter stating that the May 8 hearing that had been canceled was the hearing on husband's motion, not the hearing for the dissolution. Husband disagreed. On May 3, husband sent a letter to the district court administrator asking for notice of when the case would be rescheduled and asking for a continuance. On Friday May 5, the district court, trying to remove any confusion, stated the dissolution hearing would occur on May 8. Also on May 5, the district court administrator received a fax and a phone call from an attorney stating he was negotiating terms for representing husband but had not yet been retained and that he would need a 60–day continuance of the proceeding.

At the May 8 hearing, husband (still pro se) asked for a continuance, the district court denied the request, husband withdrew from the courtroom, and the district court took testimony from wife. An amended judgment dissolving the parties' marriage was entered on May 26 and husband, after the denial of his posttrial motion, appeals.

## ISSUES

1. Does Minnesota's dissolution statute allow "divorce on demand"?

2. Is marriage a contract for purposes of the Contract Clauses of the United States and Minnesota Constitutions?

3. Did the district court abuse its discretion by denying husband's request for continuance?

## ANALYSIS

Minnesota allows marriages to be dissolved if there has been an "irretrievable breakdown of the marriage relationship." Minn.Stat. § 518.06, subd. 1 (2000); see Minn.Stat. § 518.10(g) (2000) (requiring dissolution petition to allege "irretrievable breakdown of the marriage relationship"). While husband denies challenging the constitutionality of the Minnesota's dissolution statute, he argues that to be constitutional, the statute cannot be construed to allow "divorce on demand" because that would interfere with his right to contract. See U.S. Const. art. I, § 10 (prohibiting laws "impairing the obligation of contracts"); Minn. Const. art. I, § 11 (same). To challenge the dissolution of his marriage on these grounds is to functionally argue that the dissolution statute was applied to grant wife a "divorce on demand," thereby unconstitutionally depriving husband of his right to contract. Such an argument assumes that the Minnesota dissolution statutes allow "divorce on demand" and that

marriage is a contract. Both assumptions are incorrect.

## I.

In Minnesota, if there is a dispute about whether a marriage is irretrievably broken, "the court shall consider all relevant factors" and find whether the marriage is irretrievably broken. Minn. Stat. § 518.13, subd. 2 (2000). "Irretrievable breakdown" occurs when "there is no reasonable prospect of reconciliation." *Id.* To find irretrievable breakdown of a marriage in a case where the existence of such a breakdown is contested,

> [t]he finding [of irretrievable breakdown] must be supported by evidence that (i) the parties have lived separate and apart for a period of not less than 180 days immediately preceding the commencement of the proceeding, or (ii) there is serious marital discord adversely affecting the attitude of one or both of the parties.

*Id.* Here, the parties had been separated, but not for 180 days, before wife petitioned to dissolve the marriage. The district court, however, believed wife's testimony about the state of the parties' marriage and found an irretrievable breakdown of the marriage. A party's testimony is a sufficient basis for a finding of irretrievable breakdown of a marriage. *See Hagerty v. Hagerty*, 281 N.W.2d 386, 388 (Minn.1979) (stating irretrievable breakdown "can also be shown by evidence of only one party's belief that it is the existing state, particularly where the parties have been living apart"); *Hollander v. Hollander*, 359 N.W.2d 55, 56–57 (Minn. App.1984) (affirming finding of irretrievable breakdown noting that, among other things, it was supported by wife's testimo-

ny). A statute that requires proof of "no reasonable prospect of reconciliation" and "serious marital discord adversely affecting the attitude of one or both of the parties" before a marriage can be dissolved does not allow "divorce on demand." Moreover, husband's withdrawal from the courtroom means he neither entered evidence contrary to wife's assertions on this point nor cross-examined her regarding the state of the marriage. Thus, the only evidence regarding the state of the parties' marriage was wife's uncontradicted testimony.

## II.

Marriage, "so far as its validity in law is concerned," is a contract. Minn. Stat. § 517.01 (2000). That marriage is a contract for determining its *validity* does *not* mean marriage is a contract in the usual sense of that term. The basis for husband's argument that marriage is a contract is *Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 518, 4 L.Ed. 629 (1819).[1] There, the parties litigated whether a charter granted to certain college trustees was a contract and, if so, whether it could be altered by laws passed by the state legislature. 17 U.S. (4 Wheat.) at 625–27. The Court held that the charter was a contract. 17 U.S. (4 Wheat.) at 627. It then addressed whether that contract was protected by the Contract Clause of the U.S. Constitution. In doing so, the breadth to be given the term "contract" was disputed. One of several arguments against a broad construction of "contract" was:

> That even marriage is a contract, and its obligations are affected by the laws respecting divorces. That the clause in the constitution, if construed in its

---

1. Husband's argument focuses on the U.S. Constitution. Therefore, this opinion does as well.

greatest latitude would prohibit these laws.

17 U.S. (4 Wheat.) at 627–28. The Court ruled that "the term 'contract' must be understood in a more limited sense." 17 U.S. (4 Wheat.) at 628. In addressing the argument regarding divorce, the Court noted:

> [The contract clause] never has been understood to restrict the general right of the legislature to legislate on the subject of divorces. Those acts enable some tribunal, not to impair a marriage contract, but to liberate one of the parties because it has been broken by the other. *When any state legislature shall pass an act annulling all marriage contracts, or allowing either party to annul it without the consent of the other, it will be time enough to inquire whether such an act be constitutional.*

17 U.S. (4 Wheat.) at 629 (emphasis added). The emphasized text is the crux of husband's argument. In a case involving whether a charter for a college is a contract protected by the U.S. Constitution, it is at best dictum. *See State ex rel. Foster v. Naftalin,* 246 Minn. 181, 208, 74 N.W.2d 249, 266 (1956) (stating dicta "generally is considered to be expressions in a court's opinion which go beyond the facts before the court and therefore are the individual views of the author of the opinion and not binding in subsequent cases."). Additionally, to read the dictum stating that "there will be time enough to inquire" whether a divorce statue is constitutional, as saying that such statutes *are un* constitutional is both to misread the dictum and to read the dictum as containing an advisory opinion. *See Princeton Univ. v. Schmid,* 455 U.S. 100, 102, 102 S.Ct. 867, 869, 70 L.Ed.2d 855 (1982) (stating courts do not sit "to give advisory opinions about issues as to which there are not adverse parties before

[it]"). Thus, *Dartmouth* cannot be read to support the idea that marriage is a contract within the meaning of the U.S. Constitution.

Any doubt about the meaning of *Dartmouth* was eliminated in *Maynard v. Hill,* 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654 (1888). There, a husband moved away from his wife and to the Oregon Territory. Once there, he, without the knowledge or consent of his wife, procured a divorce. Later, he died. In the resulting litigation involving his estate, the validity of the divorce was questioned. The Supreme Court stated:

> The organic act [of the Territory] extends the legislative power of the territory to all rightful subjects of legislation "not inconsistent with the constitution and laws of the United States." The only inconsistency suggested is that it impairs the obligation of the contract of marriage. Assuming that the prohibition of the federal constitution against the impairment of contracts by state legislation applies equally, as would seem to be the opinion of the supreme court of the territory, to legislation by territorial legislatures, *we are clear that marriage is not a contract within the meaning of the prohibition.* As was said by Chief Justice Marshall in the *Dartmouth College Case,* not by way of judgment but in answer to objections urged to positions taken: "The provision of the constitution never has been understood to embrace other contracts than those which respect property or some object of value, and confer rights which may be asserted in a court of justice. It never has been understood to restrict the general right of the legislature to legislate on the subject of divorces." [2]

2. That *Maynard* refers to the relevant portion of *Dartmouth* as having been stated "not by

*Maynard,* 125 U.S. at 210, 8 S.Ct. at 729 (emphasis added).

■ Husband argues that *Maynard* is not binding because it misconstrues *Dartmouth* and was wrongly decided. Husband, however, cites no authority allowing this court to ignore, correct, or overrule the United States Supreme Court regarding the meaning of the United States Constitution.

Because husband incorrectly reads the Minnesota dissolution statute to allow "divorce on demand" and because he misreads the Supreme Court's statements on the subject of whether marriage is a contract, we need not address whether Minnesota's dissolution statutes must be construed in a manner different from the way they were applied here.[3]

## III.

■ Husband challenges the denial of his request for a continuance. Whether to grant a continuance is discretionary with the district court. *Kate v. Kate,* 234 Minn. 402, 410, 48 N.W.2d 551, 557 (1951). The critical question in evaluating a continuance "is whether a denial prejudices the outcome of the trial." *Jones v. Jones,* 402 N.W.2d 146, 150 (Minn.App.1987). In denying the continuance, the district court stated (a) the request was not timely; (b) husband had adequate time to hire counsel; (c) the April 26 order cancelled the hearing on husband's motion to dismiss,

not the "trial"; (d) it was "very obvious" husband believed the dissolution hearing was set for May 8 because he sought a continuance; and (e) husband requested the continuance for delay. On this record, these findings are supported and husband has not shown that the district court abused its discretion in denying his request for a continuance. Indeed, that husband's request was made for the purpose of delay is a determination that husband did not act in good faith, and one to which we must defer. *See Tonka Tours, Inc. v. Chadima,* 372 N.W.2d 723, 728 (Minn. 1985) (whether party acts in good faith is, essentially, credibility question); *Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn.1988) (appellate courts defer to district court credibility determinations).

## DECISION

The Minnesota dissolution statues do not allow "divorce on demand," marriage is not a contract for purposes of the Contract Clauses of the United States and Minnesota Constitutions, and husband has not shown that the district court abused its discretion in denying his request for a continuance. Therefore, we affirm the district court.

**Affirmed.**

way of judgment," shows that *Maynard* recognized *Dartmouth's* discussion of divorce was dictum.

3. Even if marriage is a contract, appellant failed to introduce any evidence of the terms of his "contract." Therefore, the terms of his "contract" would be those provided by statute. And, the statute provides that a marriage can be dissolved if it is irretrievably broken. Thus, to prevail in this appeal, husband would have to show that the district court's finding of an irretrievable breakdown of the marriage is clearly erroneous. *See*

Minn. R. Civ. P. 52.01 (stating findings of fact not set aside unless clearly erroneous). When reviewing findings of fact, we view the record in the light most favorable to the district court's findings. *Vangsness v. Vangsness,* 607 N.W.2d 468, 472 (Minn.App.2000). Here, because husband withdrew from the courtroom, wife entered the only evidence on the state of the marriage. Viewing that evidence in the light most favorable to the district court's finding that the parties' marriage was irretrievably broken, the finding is not clearly erroneous.