## PATRICIA F. KAISER v. WILLIAM H. KAISER.

186 N. W. (2d) 678.

April 30, 1971—Nos. 42273, 42288.

174

*Katz, Taube, Lange & Frommel* and *A. Larry Katz,* for defendant.

*Thompson, Hessian, Fletcher & McKasy* and *John J. McKasy,* for plaintiff.

Heard before Knutson, C. J., and Murphy, Otis, Peterson, and Kelly, JJ.

PETERSON, JUSTICE.

Plaintiff, Patricia F. Kaiser, was divorced from defendant, William H. Kaiser, on February 28, 1968. The parties, each represented by counsel, negotiated a stipulation for a division of property, alimony for plaintiff, and support money for each of their five children, who were to be in plaintiff's custody. The terms of the stipulation were incorporated in the judgment and decree of divorce.

On January 9, 1969, within a year after the divorce, plaintiff moved the district court for an order amending the divorce decree to increase the amounts of alimony, child support, and property settlement, claiming "change of circumstances and fraud."

The court ordered an increase in the amount payable by defendant for alimony and child support but denied plaintiff's motion for modification of the property settlement. We affirm that part of the order denying modification of the property settlement, reverse the part relating to alimony, and remand the part relating to support money for the further consideration of the trial court.

### Original Decree and its Amendments

Plaintiff was awarded fee title to the homestead of the parties in Edina, Minnesota, together with the furniture and household furnishings of the parties. She was awarded an automobile, with the additional provision that defendant was to provide her with automobile insurance and was to pay all other expenses incident to the operation of the automobile. This award is unchanged.

Plaintiff was awarded alimony in the sum of $300 per month and, in addition, defendant was required to maintain medical and hospital insurance for her benefit. The challenged order increased the alimony to $400 per month.

Plaintiff was awarded custody of the five children of the marriage, ages 6 to 13, and support money in the sum of $200 per child per month until each attained the age of 22 years (except as each child should become emancipated or self-supporting prior to that age) ; and defendant was to pay the college tuition for each child. In addition, defendant was to maintain medical and hospital insurance for the children and was to maintain five existing life insurance policies on his life, each with a child as beneficiary and each with a face value of $18,000. Defendant remarried subsequent to the divorce and thereafter obtained permanent custody of the parties' eldest child, a son then age 14, with a consequent reduction of $200 per month payable to plaintiff for the support of that child. The challenged order increased the support money to $250 per child per month, the effect of which was to provide the same total of support money for the children remaining in plaintiff's custody. The aggregate amount of cash alimony and support payable to plaintiff had been $1,300

per month, or $15,600 per year; it would now be, with omission of one child, $1,400 per month, or $16,800 per year.

### Alleged Change in Circumstances and Fraud

No claim is made that either the alimony or support provisions made in the original judgment and decree were inadequate for the actual needs of plaintiff's family. The monthly cash amount directly payable to plaintiff as alimony was small in comparison to the cash amount of support for each child, but we may assume that such practical matters as plaintiff's availability for employment[1] and the taxability of alimony influenced the allocations between alimony and support money. Measured by the financial situation of the defendant at the time of the negotiations, the cash payments for alimony and support, plus the other substantial monetary obligations, were not ungenerous. At that time, defendant had a before-tax annual income of slightly more than $25,000 and the net worth of his business interest in Kaiser Sales Company was approximately $3,000.

The asserted change in circumstances and alleged fraud in the negotiation of the stipulation for alimony, support, and property settlement are based exclusively on the fact that within just a year after the divorce defendant's annual income doubled to some $50,000 and his net worth vaulted to a figure in excess of $240,000. Although there was this remarkable change in *defendant's* circumstances, there was otherwise no marked change in *plaintiff's*.[2]

---

[1] Plaintiff, a college graduate, is employed part-time at the Minneapolis Public Library, from which she earned $828 in the calendar year 1968.

[2] Plaintiff did collaterally claim a change in the cost of living for her family. As against the $1,300 payable by defendant for those purposes, she asserted a family budget of $1,563 (both of which sums reflect a family unit of five, rather than four, children). Her budget, however, included an item of $200 for "savings" and an item of $350 per month for "clothing and household items and repairs." The former is not a cost of living and the latter, by her own accounting, was at least $200 more than was actually spent. There was, in short, no showing of sig-

## Disposition of the Issues

■ The trial court denied plaintiff's motion to amend the divorce judgment and decree with respect to the division of property, expressly finding that "[t]here was no misrepresentation of an existing material fact or fraud in the entry into the predecree stipulation on February 20, 1968."[3] The finding is fully supported by the evidence, and the order accordingly is to that extent affirmed.

Ordinarily it is unnecessary to recite the evidence supporting such finding, but the spectacular change in defendant's financial circumstances so soon after the divorce warrants discussion. Defendant was a manufacturer's representative for the Panasonic line of electronic equipment in a four-state area of Minnesota, North Dakota, South Dakota, and the upper two-thirds of Wisconsin. He performed these sales services through a corporation, Kaiser Sales Company, owning 79 of its 100 shares. The parties' joint personal income tax returns and the financial statements of the company for the year ending December 31, 1966, documents prepared by a certified public accountant, were submitted to counsel for plaintiff during negotiations of the financial arrangements of the pending divorce action. The financial statements for the company showed a net profit of slightly more than $2,000 and a net worth of approximately $3,000. The tax returns showed personal earnings slightly in excess of $25,000.

Special Transportation Services, Inc. (hereafter STS), a corporation organized in May 1968 and whose registered shares were traded in the local over-the-counter market, was interested in diversified activities as a corporate conglomerate. STS con-

---

nificant change in plaintiff's financial needs, and the trial court made no finding that there was any change in her circumstances.

[3] Although not asserted in plaintiff's motion, plaintiff apparently asserted alternatively at trial, as she has on appeal, that the stipulation was, in any event, the result of mistake. The trial court made an express finding that there was neither mutual nor unilateral mistake to justify setting aside the property settlement. This finding is supported by the evidence.

sidered that Kaiser Sales Company, with its relationship to Panasonic, would be an initial "glamorous acquisition," affording entry into the field of imported electronics. According to defendant, Panasonic was the largest selling brand of radios and tape recorders in the four-state area and the third largest in TV sets. Defendant's relationship with Panasonic, as STS understood, was primarily personal, there being no formal contract guaranteeing either the amount of commissions or the duration of their business relationship.

STS contacted defendant in August 1968, 6 months after defendant's divorce, to negotiate the acquisition of the Kaiser stock and defendant's personal services. Defendant acquired the remaining 21 shares of Kaiser and sold all the shares to STS on October 14, 1968, Kaiser thereafter functioning as a wholly owned subsidiary of STS. A financial statement of Kaiser showed its net worth, as of October 2, 1968, at $8,600. Notwithstanding this minimal net worth, STS purchased defendant's shares for $240,000 cash, plus 70,000 shares of nonregistered stock, not tradable in the active market, deliverable in annual installments of 17,000 shares. Although defendant valued the 70,000 shares at $700,000 on his income tax return for that year, it is conceded that, measured by today's market, the value of the stock is considerably less.

As a critical part of the acquisition, STS formed a 7-year contract between Kaiser and defendant for his personal services (to the exclusion of all other employment) at an annual salary of $36,000; and to insure its interest in defendant as a key man, STS purchased a million dollars' insurance on his life.

The entire transaction originated and was consummated subsequent to the divorce. As the trial court found, there was no showing of collusion or even prior acquaintance between defendant and the officers or legal counsel of STS. This was fully attested by the president and attorney for STS as well as the attorney for defendant. The president of STS testified that $240,000 was not a fair price for the stock of Kaiser and that

this transaction, together with the employment contract, in reality was "buying the man who is capable of producing for us." Defendant, at the request of STS, had obtained the written acquiesence of Panasonic to this change affecting its business in the four-state area.

The essence of plaintiff's claim of fraud is that at the time of the divorce in February 1968 defendant had, but concealed, an actual net worth of $940,000. There is no evidence, however, that the Kaiser financial statement of December 31, 1966, was false. The evidence shows nothing more than that, by subsequent and spectacular good fortune in dealing with STS, defendant's net worth became at least $240,000, and potentially even more in the event STS were to prosper to the extent that defendant would realize upon his 70,000 shares of STS stock.

It is conceded that, by the terms of Minn. St. 518.64, a property settlement is final and is not subject to modification merely because of a subsequent change in the financial circumstances of the parties. Plaintiff, having failed to establish as a fact that there was either fraud or mistake, had no basis in law for modifying the property settlement. See, Kiesow v. Kiesow, 270 Minn. 374, 133 N. W. (2d) 652; Johnson v. Johnson, 243 Minn. 403, 68 N. W. (2d) 398; Hafner v. Hafner, 237 Minn. 424, 54 N. W. (2d) 854. See, also, Clark, Domestic Relations, § 16.15.

■ The parts of the trial court's order amending the alimony and child support provisions of the original divorce decree present a different question. There is no question, as a matter of general principle, that a court has the power to revise a divorce decree to meet changed circumstances of the parties, particularly as it relates to the needs of their children. See, Minn. St. 518.64, 518.17, and 518.18. This court has been reluctant to interfere with the substantial discretion necessarily reposed in the trial court with respect to these matters, but we have at the same time counseled restraint in the exercise of judicial discretion to avoid revision unless there has been such material change in circumstances as to make the proposed changes fair and equitable. See,

Kiesow v. Kiesow, *supra;* Mark v. Mark, 248 Minn. 446, 80 N. W. (2d) 621; Kate v. Kate, 234 Minn. 402, 48 N. W. (2d) 551. The question, therefore, relates to the nature of changed circumstances sufficient to invoke the discretionary authority of the court.

The fact that the financial rights and obligations of the parties have been fixed in the divorce decree as a result of stipulation is an important consideration restraining, although not controlling, the court's authority. It should not be presumed that the initial decree would have been the same had the court made its determination wholly without agreement of the parties. This is especially true with respect to alimony, for the reasons relevantly stated in Kate (234 Minn. 408, 48 N. W. [2d] 555):

"* * * If the alimony which [the wife] is presently receiving is adequate, considering all the factors governing an original award, then there is no occasion to modify the award merely because the alimony that she bargained for and received [at the time of the decree] gave her a better standard of living then than it does today. The circumstances of the parties may have changed materially, and yet, if [the wife] drove a hard bargain in her original agreement for a property settlement and alimony, she may still be receiving all that a court would be required to award her if it were considering the matter originally."

Child support requirements, relating as they do to the nonbargainable interests of the children, are less subject to restraint by stipulation. As we stated in Hellman v. Hellman, 250 Minn. 422, 426, 84 N. W. (2d) 367, 371, and so recently reiterated in Tammen v. Tammen, 289 Minn. 28, 182 N. W. (2d) 840:

"Where the divorce decree has adopted a stipulation agreed upon by the parties, such stipulations are purely advisory to the court and do not limit its discretionary power to determine whether a future change in circumstances warrants revision, but they are entitled to considerable evidentiary weight which will make the court more reluctant to modify the original decree than it would otherwise be, particularly where the parties have

had the benefit of able counsel in so stipulating. Stipulations of this kind are deemed to have been entered into in view of the authority conferred upon the court by statute and they are merged into the judgment, but they are not contracts which bind the court or preclude it from making such changes as the changes in circumstances justify. Mark v. Mark, *supra*."

A basic element in this case is that the trial court did not expressly find that the existing award of alimony and support, irrespective of its stipulated origin, was inadequate or inequitable.

There is in this record, we underscore, no clear showing of any adverse change in the circumstances of either plaintiff or the children. Plaintiff, however, relying upon Annotation, 89 A. L. R. (2d) 7, 33, urges that a judicially noticeable material increase in the cost of living[4] is itself a sufficient fact justifying an increase in support payments where it is shown that the father had the ability to pay more than the amount originally allowed.[5] Toebe v. Toebe, 225 Minn. 323, 30 N. W. (2d) 585, and Lammi v. Lammi, 244 Minn. 568, 70 N. W. (2d) 456, Minnesota cases cited in the annotation, do not squarely hold that such increase in the cost of living is, without more, a sufficient change in circumstances to justify modification of the award. Although

---

[4] We do not doubt that judicial notice may be taken of both the fact of increase and the extent of increase in the cost of living by resort to consumer price indices published by the United States Bureau of Labor Statistics. Cf. State, Dept. of Highways, v. Halvorson, 288 Minn. 424, 181 N. W. (2d) 473.

[5] Although less judicially noticeable, we are not unaware that wages and salary often increase at a rate at least approximating the increase in the cost of living. Theoretically, changing alimony or support payments commensurate with the cost of living would permit the parties to maintain their respective financial affairs in approximately the same position as that which existed at the time of divorce. As a practical matter, however, to permit modifications of awards on that basis alone would impose an enormous burden upon the courts, for it could in effect require annual adjustments in every judgment and decree.

both cases took note of the diminished purchasing power of money subsequent to the divorce, in each case the reference to increased cost of living was in contextual reference to other changed circumstances of the parties.[6] Increased cost of living, of course, will in all events be reflected in the family's actual expenditures, by which the adequacy or inadequacy of the existing award may be sufficiently measured. The important fact in the instant case is that plaintiff did not show that her family budget exceeded the alimony and support presently received from defendant.

The ultimate fact in this case is that the only proved change in the circumstances of the parties is the increased wealth of the defendant. The ultimate question for decision, then, is whether a favorable change in the circumstances of a divorced husband without an unfavorable change in the circumstances of the divorced wife or the children in her custody constitutes a sufficient ground for a change in the stipulated financial arrangements incorporated in the judgment and decree of divorce. We think not.

Our cases disclose some inconsistency in language on this point. In Saturnini v. Saturnini, 260 Minn. 494, 498, 110 N. W. (2d) 480, 483, this court made the statement that modification of support payments "generally requires only a showing of change in either need on the one side or ability to pay on the other." This language, however, was wholly dictum, made in the

---

[6] In Toebe v. Toebe, 225 Minn. 323, 30 N. W. (2d) 585, which is the case more in point, the trial court had by memorandum expressly stated that "the financial situation of the [wife] had made a substantial turn for the worse inasmuch as she had incurred and was owing a considerable indebtedness which was not true at the time of said decree," and that "the sum of $40 per month was wholly inadequate to support the three children." Although this court did not recite in its opinion from the trial court's memorandum, it did state (225 Minn. 324, 30 N. W. [2d] 586) that the wife and her three children had been forced to live in just two rooms and that life for them had "obviously been very difficult."

course of holding, as a matter of procedure, that a motion for modification of a support award was an issue determinable on the basis of affidavits and without oral testimony. In Kiesow v. Kiesow, 270 Minn. 374, 385, 133 N. W. (2d) 652, 660, a situation similar to Toebe v. Toebe, *supra,* we affirmed an order amending alimony and support payments required of defendant 9 years after the original decree, but only after taking general note of additional requirements of plaintiff and probable increased maintenance requirements for children of increased age. "[W]e are persuaded to let the award stand," the opinion significantly stated, "even though it may have been unjustified if it were based on the increased income alone."[7] The trial court in the instant case cited Kiesow as authority for its order, but without noting that cautionary language or the distinction in the factual premise.

The restraint upon judicial discretion stated in this opinion is more directly supported by cases from other jurisdictions. Arnold v. Arnold, 332 Ill. App. 586, 76 N. E. (2d) 335, as discussed in Clark, Domestic Relations, § 14.9, p. 460, is much in point with the situation at bar:

"* * * In the leading case, Arnold v. Arnold, the wife got a divorce in 1930, with alimony at one hundred and seventy-five dollars per month. At the time the husband was earning seven thousand five hundred dollars per year. In 1945 the wife applied for an increase in alimony, partly on the ground that by virtue of an invention made after the divorce the husband had become a millionaire. The court held that she was entitled only to be supported on the scale which she enjoyed at the time of the divorce, and that she could not be granted an increase solely on the basis of the husband's greater wealth. Alimony was increased,

---

[7] Our recent decision in Tammen v. Tammen, 289 Minn. 28, 182 N. W. (2d) 840, likewise cites Kiesow v. Kiesow, 270 Minn. 374, 133 N. W. (2d) 652, not Lammi v. Lammi, 244 Minn. 568, 70 N. W. (2d) 456, and with the same result. The questions considered at this point of the opinion were not squarely raised in Tammen.

however, to take care of her increased needs. If the original award adequately covers the wife's needs, the case is correct in refusing to increase it on the sole ground of the husband's greater wealth. Although necessarily alimony may decline with the husband's declining prosperity, it does not follow that it should rise if he strikes it rich. The purpose of alimony is to care for the wife's needs after divorce, not to provide her with a lifetime profit-sharing plan. But if the original award was less than she really needed because of the husband's inability to pay more, then his later prosperity should justify an increase up to the amount necessary to provide the wife with adequate support. To that extent improvement of the husband's earning power is sufficient to support a modification of alimony."

In Burr v. Burr, 313 Mich. 330, 332, 21 N. W. (2d) 150, 151, the divorced wife moved for an increase in monthly alimony solely on the showing that her divorced husband, a physician, had present income substantially in excess of that existing at the time of the divorce, with no showing that the existing alimony was not adequate to meet her needs. The Michigan Supreme Court, affirming an order denying the wife's motion, recalled its earlier pronouncement that alimony, as an incident of marriage, is based on "the underlying principle that it is the duty of the husband to support his wife, not necessarily to endow her."

In Lane v. Lane (Mo. App.) 439 S. W. (2d) 550, 552, the court said in like vein:

"In determining whether or not there has been a change of condition that would justify an increase in alimony payments it is not sufficient, alone, that the husband's income or net worth has greatly increased since the alimony judgment was rendered. That is only to be considered with reference to his ability to pay more if it is determined that there has been such a change in condition so as to justify an increase in alimony payments to the wife. The fact that defendant, in this case, has trebled his income since 1962, only becomes material here if it is determined that the plaintiff is entitled to receive a larger sum in order to

maintain her in about the same standard of living to which she was accustomed [at the time of the divorce decree.]"

See, also, to like effect, Kesseler v. Kesseler, 236 N. Y. S. (2d) 477; Feves v. Feves, 198 Ore. 151, 254 P. (2d) 694.

Stowe v. Stowe, 30 Wis. (2d) 565, 141 N. W. (2d) 228, represents an application of the same rule to child support. The Wisconsin Supreme Court held that the trial court had abused its discretion in increasing child support payments from $150 to $186 per month where the order was based merely upon the increase in percentage of the husband's net income in the 5-year period since the date of the divorce. See, also, Commonwealth ex rel. Gershman v. Gershman, 181 Pa. Super. 76, 122 A. (2d) 813.

We reverse the order increasing the alimony payable to plaintiff without hesitation, for it is clear that there has been no such adverse change in her circumstances as would justify an increase in the amount for which she had so recently stipulated. This does not, of course, foreclose her from future applications in the light of her circumstances at such times.

We are hesitant, on the other hand, wholly to reverse the order with respect to the stipulated amount of support for the children. We are not unaware that the change of custody of one son from plaintiff to defendant does represent a change of circumstances, the materiality of which is better left to the determination of the trial court. Although the removal of one child obviously would decrease the total expense for the family unit, the decrease would not necessarily be in precisely the same amount as was allocated to each child by the stipulation. The court may have had this in mind when, by increasing the individual amount of support for each child, it restored the total amount of child support to which the parties had stipulated. Notwithstanding plaintiff's burden to prove increased needs, moreover, our decision in such cases as Toebe v. Toebe, *supra;* Kiesow v. Kiesow, *supra;* and Tammen v. Tammen, *supra,* have not in the past insisted upon precision of proof with respect to

the increased needs of growing children. The matter of increasing the amount of support money for the four children now in plaintiff's custody is accordingly remanded to the trial court for redetermination by it, in the light of the principles stated in this opinion.

Affirmed in part; reversed in part; reversed and remanded in part. Costs and disbursements are not allowed to either party.