**In re the Marriage of Jacquelyn M. WEBB, petitioner, Respondent,**

v.

**Ronald Neil WEBB, Appellant.**

**No. C6–84–1193.**

Court of Appeals of Minnesota.

Jan. 15, 1985.

Ellen Dresselhuis, Minneapolis, for respondent.

William G. Clelland, Minneapolis, for appellant.

Heard, considered and decided by NIERENGARTEN, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

FOLEY, Judge.

This is an appeal from an order holding appellant Ronald Webb must pay respondent Jacquelyn Webb the cash value of 1,170 shares of his Standard Oil stock. We affirm.

## FACTS

Ronald Webb (appellant) and Jacquelyn Webb (respondent) were divorced in 1979 after a marriage of 21 years. At the time of the dissolution, appellant owned 1,170 shares of Standard Oil stock which the parties divided equally by written stipulation:

Petitioner shall have and be entitled to the cash value of 495 shares of Standard Oil stock at their actual value on January 1, 1984, as full and final settlement of all interest in and to Respondent's Standard Oil Stock Investment Program.

The parties agreed that 495 was a clerical error and substituted the correct figure of 585.

At the time of the dissolution, the parties agreed appellant should pay respondent 585 shares of his Standard Oil stock, exactly one half of his holdings as of January 1979. He also agreed to split with her the value of their home and the value of one bank account.

Between the date of the dissolution decree and the distribution date, the Standard Oil stock split, decreasing the value of each share by one half, but doubling their number. Respondent seeks the cash value of 585 specific shares, now divided and consisting of 1,170 shares of Standard Oil stock.

The court interpreted the parties' stipulation to award respondent the cash value on January 1, 1984 of the 585 shares in exist-

ence at the time of the 1979 decree. The court held that since the 585 shares have split, the respondent is entitled to the value of the 1,170 shares. The court stated it was interpreting, not modifying the judgment and decree. It made no finding regarding any affidavit or any other parol evidence.

## ISSUE

■ Did the trial court err in awarding respondent the cash value of 1,170 shares of stock, when the dissolution decree provided for an award of 585 shares and the stock split prior to the distribution date?

## DISCUSSION

The court made the following findings, in pertinent part:

5. That since the date of the Judgment and Decree the 585 shares of Standard Oil Stock have split two for one and those same 585 shares are now represented by 1,170 shares.

6. That the Decree further provided that the respondent could pay the petitioner any time prior to January 1, 1984 but that the money or shares became due to the petitioner on that date. In the interim the respondent was entitled to receive the dividends.

7. That it is the court's ruling that the parties intended that the petitioner receive the value on January 1, 1984 of the 585 shares which existed on the date of the Decree. Since the 585 shares were split and now represent 1,170 shares, the petitioner is entitled to the value of the 1,170 shares.

8. That the court in making its ruling is not modifying the Judgment and Decree but is interpreting the Judgment and Decree since the parties differ on the interpretation.

The court found that the parties differed in their interpretation of the divorce decree. This is tantamount to a finding that the language of the decree is ambiguous and that the intent of the parties must therefore be investigated. Based on the record

before it, the court found that the intent of the parties was that respondent should receive the value of the 585 shares that existed on the date of the decree, now converted into 1,170 shares.

Appellant contends that this is an impermissible modification of a judgment. He argues there was no fraud or mistake and therefore no jurisdiction to amend the judgment. *See* Minn.Stat. § 518.64, subd. 2 (1982).

The Minnesota Supreme Court held that a property settlement is not subject to modification merely because of a subsequent change in the financial circumstances of the parties. *Kaiser v. Kaiser*, 290 Minn. 173, 186 N.W.2d 678 (1971). (There, the husband acquired substantial money after the divorce.) The supreme court also said a trial court could not modify a dissolution decree to amend a lien on the parties' house. *Kerr v. Kerr*, 309 Minn. 124, 243 N.W.2d 313 (1976).

The case before us is completely different. Here, the dissolution decree distributed an asset with a fluctuating value. The decree awarded respondent 585 shares, but postponed the distribution until January 1, 1984 to ameliorate tax ramifications on appellant.

■ In view of the fact that common stocks fluctuate in value, a dissolution decree which considers these stocks should make provision for changes in value between the date of the decree and the distribution date. This concern was expressed in *Bollenbach v. Bollenbach*, 285 Minn. 418, 436, 175 N.W.2d 148, 159 (1970), where the court said:

> [T]he decree should be so phrased as to permit such modification as might be required to prevent the inequities resulting from marked changes in market value of the property between the date of the decree and a timely execution of the plan of distribution contemplated by it, at least to the extent that modification is possible before the judgment and decree become final.

Here, the decree did not expressly provide for the possibility of a stock split, but absent any provision in the decree to the contrary, one half of the increased quantity of stock was awarded to the respondent.

The distribution of the stock was postponed to lessen the tax repercussions on appellant. During the period between the date of the decree and the distribution date of January 1, 1984 the stock was left with appellant. Appellant was also entitled to keep any dividends which accrued during that period. Certainly the decree gave consideration to appellant's concerns.

The trial court observed that had the stock decreased in value, any market loss would have been shared by respondent and not fallen entirely on appellant. *See Bollenbach*, 285 Minn. at 436, 175 N.W.2d at 159.

Further, the increase to respondent due to the stock split does not give her a disproportionate share of the marital assets that would shock the conscience of the court. It gives to respondent, as well as to appellant, exactly what the stipulation and the decree contemplated, namely, an equal division of the common stock.

The court below did not modify the judgment to expand the wife's property based on the husband's good fortune, as in *Kaiser*. Rather, the court clarified the decree to properly distribute an item already allocated to respondent.

■ Appellant also contends the court improperly considered parol evidence in determining the intent of the parties. Under the parol evidence rule, evidence outside a written document may not be used to vary or contradict the unambiguous terms of the document. *Hield v. Thyberg*, 347 N.W.2d 503 (Minn.1984). Here, there is no evidence that the court considered any outside evidence. Even if it had, the ambiguity in the application of this decree justified use of parol evidence. Because the stock split created an ambiguity in the agreement, parol evidence could have been admitted to clarify the intent of the parties. *Blattner*

*v. Forster*, 322 N.W.2d 319, 321 (Minn. 1982).  There was no error.

**DECISION**

We affirm the trial court's decision.