In re the Marriage of Lidia
EICHENHOLZ, Petitioner,
Appellant,

v.

Alfred EICHENHOLZ, Respondent.

No. C5–86–1822.

Court of Appeals of Minnesota.

June 16, 1987.
Review Denied Aug. 12, 1987.

Paul C. Clabo, Minneapolis, for appellant.

Elizabeth Norton Ferguson, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for respondent. .

Considered and decided by the court en banc, consisting of POPOVICH, C.J., and PARKER, FOLEY, WOZNIAK, SEDGWICK, LANSING, HUSPENI, FORSBERG, LESLIE, NIERENGARTEN, RANDALL, CRIPPEN, STONE,* and MULALLY,* JJ.

## OPINION

LANSING, Judge.

This appeal is from an amended dissolution judgment and decree modifying a maintenance award. Lidia Eichenholz appeals the modification as insufficient because it does not allow her to meet increased rent and medical expenses, cost-of-living increases, and her individual income tax. Alfred Eichenholz, in a petition for review, challenges the amount of the award as too high and asserts that no change of circumstances occurred sufficient to trigger a modification. We reverse and remand.

## FACTS

Alfred Eichenholz and Lidia Eichenholz were married June 22, 1952, and divorced by judgment and decree entered September 8, 1966.

Alfred Eichenholz is a physician and is employed by the Veterans Administration. He currently lives in Long Beach, California, with his second wife, who is also a

---

* Acting as judges of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

practicing physician. Although he has also experienced medical problems, he is fully employed. His gross income, not considering his wife's income, was $94,954.61 in 1985–86.

Lidia Eichenholz, 62, was physically disabled by two problem pregnancies which occurred during the 14–year marriage. The first pregnancy, resulting in the birth of the couple's son, Philip, caused severe hypertension. In an effort to control the hypertension, she underwent two exploratory surgeries and has been on an aggressive drug treatment program for a number of years. This treatment has only marginally decreased the hypertension and its attendant risk of stroke, and she continues to suffer the related medical disabilities of heart disease (angina pectoris) and loss of vision (hypertensive retinopathy). Her second pregnancy ended in the birth of a stillborn child.

Although Lidia Eichenholz attended medical school in Germany, she did not obtain a license to practice medicine in the United States. She has been unable to work since 1956. Her heart disease and vision problems have resulted in permanent disability. She was the only member of her family to survive over three years' internment in a World War II concentration camp and has few close relatives.

The original dissolution decree provided permanent spousal maintenance of $300 per month through January 1967 and $200 per month thereafter. Lidia Eichenholz also received $175 per month child support, which was terminated when her health required the transfer of Philip's custody to his father. From 1967 to 1982, the $200 per month Lidia received in maintenance was her sole source of income, other than public assistance. She received $58 per month supplemental security income (SSI, social security for the disabled non-wage earner) and food stamps. Medicaid paid for her medical care. As her health deteriorated and her mobility declined, her medical expenses have steadily increased.

In 1980 she petitioned for an increase in spousal maintenance. After two years of litigation, maintenance was increased from $200 per month to $550 per month. That increase disqualified Lidia Eichenholz from receiving SSI, Medicaid coverage and food stamps, which had supplemented her income. She was unable to pay her medical expenses and several procedures had to be postponed for lack of funds. As a result, she went back to court in 1986 to have her support increased to reflect her increased expenses.

The trial court, based on essentially undisputed affidavits detailing Lidia Eichenholz's increased medical and housing expenses, affirmed the referee's specific findings on her necessary medical expenses:

10. That because [Lidia Eichenholz's] medical and dental expenses were paid by medical assistance before the increase in spousal maintenance, the Court's finding as to her minimal monthly expenses was, necessarily, an estimate.

11. That [she] incurred medical expenses averaging $99.31 per month during the period from April 1982 through July 31, 1985. Because these expenses were mainly for the treatment of chronic hypertension and not an isolated period of illness, they are expected to continue at the same level or greater.

12. That during the period [she] deferred certain other medical needs, namely: replacement of upper and lower dentures which would cost $656 or more, obtaining a new eyeglass prescription and purchasing new eyeglasses which would cost $349.95 or more, and a complete bowel examination with x-rays which would cost $183.10 [total $1,189.05].

13. That [she] is without insurance to cover medical needs and the same will cost approximately $214 per month.

These medical expenses total $412.40 per month ($99.31 for treatment for chronic

conditions, $214 per month for medical insurance, and $99.09 per month for deferred medical treatment expenses). However, when calculating Lidia Eichenholz's total monthly expenses to arrive at a maintenance amount, the court included only $115 per month for medical expenses.

The court granted an increase in maintenance from $550 to $825 per month. Both parties appeal.

## ISSUE

Did the trial court err in modifying the maintenance award?

## ANALYSIS

The trial court's findings of fact must have a reasonable and acceptable basis in fact and principle to be affirmed. *Bollenbach v. Bollenbach*, 285 Minn. 418, 426, 175 N.W.2d 148, 154 (1970).

To support a modification of spousal maintenance, the moving party must show

(1) substantially increased or decreased earnings of a party;

(2) substantially increased or decreased needs of a party;

(3) receipt of [public] assistance * * *; or

(4) a change in the cost of living for either party as measured by the federal bureau of statistics, any of which make the terms unreasonable or unfair. * * *

Minn.Stat. § 518.64, subd. 2 (1986).

The court is also required, in a motion for modification, to apply the factors in Minn.Stat. § 518.552. These factors include the financial resources of the parties; the time and training necessary to return the party seeking maintenance to the work force; and the probability, given the party's age, physical and emotional condition and skills, of becoming fully or partially self-supporting; the standard of living established during the marriage; duration of the marriage; and the length of absence from employment. Minn.Stat. § 518.552, subd. 2 (1986).

Lidia Eichenholz presented the court with affidavits about her health, the increasing expense of her health care, her lack of medical insurance, and announced increases in her rent. Although she reported that she had a checking and savings balance of $4,349.45 as of February 11, 1985, she also reported $3,103.86 in medical and $800 in personal debts. In addition, she has expenses for ongoing health problems. She has deferred needed medical procedures because of her inability to pay for them. She does not have access to necessary hospital procedures because she has no insurance.

Her rent has changed since the 1982 support increase. The letter from her landlord stated that by July 1, 1986, the rent on her efficiency apartment would be $350 per month. The increase went into effect, and the trial court was notified before it approved the referee's findings.

These increased expenses and the termination of public assistance are a sufficient change of circumstances to justify an increase in maintenance. However, the trial court's findings of fact do not support the conclusion of law that Lidia Eichenholz should receive only $825 per month maintenance. Balancing Alfred Eichenholz's income ($94,954.61) against Lidia Eichenholz's need, it was error to disregard the clearly established medical and housing needs of Lidia Eichenholz. Despite a finding that Lidia Eichenholz was without insurance to cover her medical needs, the trial court ignored, without explanation, these insurance costs in its estimate of her current needs. The needs which are enumerated in the findings of fact are entitled to full consideration. The award is inadequate to meet the minimum and necessary needs established by Lidia Eichenholz.

The dissent raises the issue of deference to the trial court's discretion in matters of maintenance, noting that the orginal award of maintenance and support in this case was set by stipulation of the parties. The

original stipulation contemplated that Lidia Eichenholz would be capable of regaining employment following the divorce. Because her disability continued and worsened, employment is not possible. Following the divorce, Alfred Eichenholz enjoyed a rising income in a favored profession; Lidia Eichenholz, because of her disability, has been forced into a subsistence lifestyle. The trial court recognized this change of circumstance when it increased maintenance in 1982. Unfortunately, the increase also destroyed eligibility for public assistance, food stamps and medicare. Alfred Eichenholz points out that she lost more in public assistance than she gained in increased maintenance. He argues that Lidia Eichenholz's maintenance should be decreased rather than increased, making her once more eligible for public assistance. The fact that an obligee spouse might receive more money from general assistance medical care under welfare rules if spousal maintenance were decreased would not justify a decrease in spousal maintenance and would seemingly violate public policy. *Safford v. Safford*, 391 N.W.2d 548, 550 (Minn. Ct.App.1986).

Alfred Eichenholz also requests de novo review, claiming the trial court abused its discretion in ordering the increase in maintenance.

> [T]he family court judge has * * * full authority to adopt the referee's recommended findings and order, modify them, reject them in whole or in part, recommit to the referee with instructions, or receive further evidence.

*Gustafson v. Gustafson*, 396 N.W.2d 911, 914 (Minn.Ct.App.1986) (quoting *Peterson v. Peterson*, 308 Minn. 297, 304, 242 N.W.2d 88, 93 (1976)). The request for de novo review is denied.

## DECISION

The trial court's decision is reversed and remanded with instructions that the trial court fully consider appellant's increased rent cost and the costs of obtaining necessary medical treatment and insurance.

Reversed and remanded.

PARKER, WOZNIAK and CRIPPEN, JJ., concur specially.

POPOVICH, C.J., and NIERENGARTEN, RANDALL, STONE and MULALLY, JJ., dissent.

PARKER, Judge (concurring specially).

I respectfully concur specially.

Some of our colleagues hold the view that the maintenance award is not an abuse of discretion because made within the reasonable range of the evidence, and I do not mean to imply disagreement with that general principle. I am concerned that when a short or moderate-term marriage has been followed by a lengthy period of divorce, the maintenance awarded should, within the trial court's sound discretion, be re-opened only for such exigent reasons as to compel that exercise. I believe the compelling facts of this case establish a need for a rather narrow exception.

Where, as here, the movant is totally disabled from working due to a medical condition resulting directly from the marriage (such as injury suffered in childbirth), even though the marriage be of moderate duration, the maintenance award must provide for the entire medical expense and support necessary to life at a minimum, decent level. Respondent appears financially capable of providing such support, and no reason appears, either by statute or in equity, why it should be less.

The state of the record seems to be unclear, however, as to the total of medical expenses and support necessary to maintain appellant at that minimum, decent level, and I would remand with directions that it be set accordingly. I would defer to the trial court's area of discretion, however, except for the special conditions of health directly attributable to the marriage which are present here.

WOZNIAK, Judge (concurring specially).

I concur in Judge Parker's special concurrence.

CRIPPEN, Judge, concurring specially.

While agreeing that the trial court decision must be reversed and the case remand-

ed for further attention, I concur specially with the lead opinion.

### 1. Rent expense.

The trial court made findings specifically stating the items making up appellant's minimum monthly expenses. These items included a rent expense of $295, the amount reported by appellant in her supporting affidavit dated August 1, 1985.

In the supplementary affidavit dated February 7, 1986, appellant reported to the court that her rent would increase to $336.25 per month on April 1, 1986. The trial court erred in disregarding this information when issuing its order dated April 15, 1986. Respondent does not dispute the claim of this error.

Lidia Eichenholz's February 1986 affidavit also reported that her rent would increase to $350 on July 1, 1986. Although that information is not pertinent to the trial court order we are reviewing, it should be taken into account on remand.

### 2. Medical insurance.

In the modification proceedings concluded in 1982, appellant testified she had applied for group health benefits that would cost from $180 to $222 per month. She reported that the application process would take about six months, or up to a year, because of the need to assess her medical problems. Contradicting these observations, appellant also testified that she would be unable to get insurance because of her prior ill health. During the earlier modification proceeding, appellant claimed personal expenses, excluding medical costs, totaling more than $400. Because the trial court found that all of her needs totaled $550 in 1982, it is evident that the trial court refused to make an allowance for appellant's purchase of medical insurance.

In the current proceeding, appellant reported that she "will be unable to cover the cost of catastrophic illness," and that her costs for "unmet medical needs" include a monthly expense of $189.50 for medical insurance, if she can obtain coverage at a cost no more than the cost of Medicare

coverage for persons over age 65. Later, in a report of her attorney to the trial court, it was again noted that appellant was "without insurance to cover catastrophic medical needs," and that "it is reasonable to expect" that her cost for coverage would be at least $214 per month, a figure represented as the current cost for Medicare hospitalization coverage. Appellant is not currently eligible to purchase Medicare coverage, and she offered no evidence indicating the actual cost of alternative coverage or the likelihood that she might succeed in buying private coverage.

Responding to appellant's current presentation on the insurance topic, the trial court found that she "is without insurance to cover medical needs," and that insurance would cost "approximately" $214 per month. In spite of this finding, the trial court made no present allowance for the purchase of medical insurance. The trial court furnished no explanation why the insurance cost topic was initially addressed in its findings but finally omitted in its estimate of appellant's current needs. This gap in the trial court's findings constitutes error, and the case must be remanded for a determination of the reasonableness of appellant's claim for payment of medical insurance cost.

On remand, the trial court should determine whether medical insurance costs are among reasonable or necessary personal expenses for appellant at the present time. It will be necessary to determine whether coverage is available, and to identify from reliable evidence what the coverage will cost. If the coverage goes beyond catastrophic costs, so that insurance benefits will reduce ordinary medical expenses for appellant, the trial court must take this into account in redetermining the amount of current medical expenses.

Respondent contends appellant is bound by the decision of the trial court in 1982 to disregard her claim for payment of medical insurance costs. Respondent argues that an issue of this kind cannot be relitigated, even if the trial court has cause to redeter-

mine the maintenance obligation because of an intervening change in circumstances. It is evident, however, that the circumstances here do not present the res judicata issue defined by respondent. In 1982, the trial court did not decide that medical insurance costs were unnecessary or unreasonable. In fact, appellant testified at the time that she was not incurring those costs, and the record shows there was a serious question whether insurance coverage was available to her. It is reasonable to conclude that the 1982 trial court order merely put aside the insurance coverage question for later modification proceedings. After the 1982 decision, appellant remained free to obtain additional information on insurance costs and to present at a later time her contention that these costs were among her necessary expenses.

Respondent also contends that an award of maintenance to cover medical insurance costs would be unjust because appellant can qualify for public assistance benefits that would involve payment for all her medical needs. The record shows appellant received public assistance before maintenance was increased in 1982, and that the increased maintenance destroyed her eligibility for assistance; in fact, as appellant points out, she lost nearly $100 more in public assistance than she gained by increased maintenance. This argument of respondent is wholly specious. It should go without saying that there can be no plea for public assistance in a circumstance where maintenance is needed and justly demanded, and where the obligor is able to pay the award.

### 3. Other medical expenses.

The trial court included $115 medical expenses in its listing of appellant's current "minimum monthly expenses." The court made related findings that appellant's past medical expenses had averaged $99.31 per month for more than three years, and that appellant had "deferred certain other medical needs," involving costs of nearly $1200. These findings corresponded approximately to appellant's claims, although the court did not address appellant's report in February 1986 that she was purchasing an additional necessary medication at a cost of $7.09 per month. The court also made no mention of appellant's claim of a $20.83 monthly cost for a wig and wig maintenance that appellant desired to purchase because of hair loss evidently related to her use of medications.

We mandate in the lead opinion the trial court's "full consideration" of all medical needs enumerated in the trial court's findings. That opinion reports that trial court findings on deferred expenses involve a monthly cost of $99.09. In my opinion, it remains for the trial court to indicate the amount of monthly maintenance required to cover necessary expenses previously deferred. The trial court found a record of "other medical needs" deferred between April 1982 and July 31, 1985, totaling $1,189.05. Over a 40-month period, these deferred needs involved an average monthly cost of about $30. On remand, it is for the trial court to determine the significance of the deferred expenses in terms of monthly maintenance that must be available in the future to meet needs that are expected to arise.

### 4. Income taxes.

The parties agree appellant will have income tax cost connected with an increase in her maintenance award. In its 1986 order, the trial court found that appellant's state and federal income tax costs of $100 per month were among her minimum monthly expenses. Depending upon the trial court's conclusions on remand regarding the amount of appellant's needs, the allowance for income tax costs may require review.

Respondent contends that a $275 maintenance increase would involve federal taxes of only $41.25 per month, under tax laws enacted after the trial court's decision in April 1986. It is true that the trial court should take into account the effect of changed income tax laws. It is not true, however, as suggested by respondent, that the trial court is obligated to limit its

award for taxes to the amount chargeable solely to a maintenance increase. The trial court is free to consider the entire amount of appellant's income tax costs.[1]

5. Substantially changed circumstances.

Respondent contends there is inadequate evidence justifying the trial court's finding that appellant's circumstances have substantially changed since 1982. We must recognize, as respondent argues, that maintenance was first established in this case in accordance with the stipulation of the parties, and that proposals to modify maintenance must be "carefully" and "reluctantly" considered under those circumstances. *Claybaugh v. Claybaugh*, 312 N.W.2d 447, 449 (Minn.1981). While the courts are not controlled by the history of a stipulation, they must be restrained by this important consideration. *Kaiser v. Kaiser*, 290 Minn. 173, 180, 186 N.W.2d 678, 683 (1971).

In her supporting affidavits, appellant claimed current necessary expenses of about $680 more than the $550 "minimum monthly expenses" recognized by the trial court in 1982. The trial court found that appellant's current "minimum" monthly expenses totaled $825, up $275 from 1982. Respondent contends that many of the new expenses claimed by appellant and recognized by the trial court represent nothing other than restatement of claims considered and rejected in 1982.

Excluding tax costs and medical insurance costs, the trial court found appellant has present minimum needs of $610 per month. It is evident from the record that this represents an increase between $150 (32%) and $195 (47%) over the same category of expenses claimed and recognized in 1982. The evidence supports the trial court's finding on these personal expenses. In addition, the court improperly disregarded $41.25 in appellant's extra rental expenses beginning April 1, 1986. The evidence demonstrates substantially increased needs of appellant. That conclusion is consistent with a cautious and restrained approach to the modification question in the case.

It is true, as respondent contends, that many of the increased medical expenses claimed by appellant differ little from those she reported in 1982. It is also true that much of the income tax cost found by the trial court is attributable to the present increase in the award and does not represent an independent change in circumstances. These considerations, however, take nothing away from the analysis of the increase in appellant's other personal needs. The trial court has not erred in choosing to alter the maintenance award.

POPOVICH, Chief Judge (dissenting).

I respectfully dissent and would affirm the trial court for the following reasons:

1. It would be difficult not to have compassion for Lidia Eichenholz. Her physical history demonstrates a life of challenge and disappointment. In addition, her personal life has been troublesome. Yet, it is not the role of this court to permit hard facts to make bad law.

2. A stipulation produced the original award of maintenance and support in this matter. Both parties were represented by competent counsel. The stipulation served the parties well for the 15 years between 1966 and 1982, until a trial court determined a sufficient change in circumstances warranted an increase in maintenance.

Stipulations regarding maintenance or property settlements are favored and encouraged. As Judge Crippen in his special concurrence notes, such stipulations must be respected and only carefully and reluc-

---

**1.** Respondent repeatedly contends that any maintenance increases must be attributable to expenses first incurred after the 1982 maintenance award. He argues the 1982 decision is final on any expenses existing at that time. We need not decide here whether respondent's point is valid, or alternatively, whether the court is free to assess current needs once it has decided that the parties have experienced substantially changed circumstances. There is no record here suggesting that income tax cost was a topic presented to the court in 1982, or that this cost was of any significance before that time.

tantly modified by a court when circumstances have changed substantially. Here, the trial court had ample opportunity to review the circumstances and properly determined a modification was required.

3. The majority does not give proper deference to the trial court's role and improperly usurps the trial court as finder of fact by conducting an independent review of the evidence. When the trial court has considered all relevant evidence, we must respect its discretion. *See Borchert v. Borchert*, 391 N.W.2d 74, 75 (Minn.Ct.App. 1986). Due deference should be given when the trial court as here has twice considered the evidence; first when initially approving the referee's decision and second when confirming the order upon later review. When the court's award rests within the reasonable range of requested modification and is supported by the evidence, we should not find an abuse of discretion.

4. Given this court's limited standard of review regarding maintenance modification, we should not engage in an independent consideration of the evidence. "The court of appeals' duty as a reviewing court is not to substitute its own judgment for that of the trial court * * *." *Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723, 727 (Minn.1985). Here, I would defer to the trial court's unique position as finder of fact and, finding no abuse of the trial court's discretion, would affirm its upward modification of maintenance.

NIERENGARTEN, Judge (dissenting).

I join in the dissent of Chief Judge Popovich.

RANDALL, Judge (dissenting).

I join in the dissent of Chief Judge Popovich.

STONE, Judge (dissenting).

I join in the dissent of Chief Judge Popovich.

MULALLY, Judge (dissenting).

I join in the dissent of Chief Judge Popovich.