*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1762**

In re the Matter of:
Jesse Eugene Schultz, petitioner,
Respondent,

vs.

Christie Jo Ruff,
Appellant.

**Filed August 10, 2015**
**Affirmed**
**Peterson, Judge**

Dakota County District Court
File No. 19AV-FA-13-1767

Zachary A. Kretchmer, Michael H. Fink, Arnold, Rodman & Kretchmer, PLLC, Minneapolis, Minnesota (for respondent)

Linda S. De Beer, Lake Elmo, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

In this appeal from an order determining that it is in the children's best interests to attend school in the school district of respondent-father's residence, appellant-mother argues that (1) the district court erred by applying the abuse-of-discretion standard when

reviewing the parenting consultant's determination of the children's best interests even though the parties stipulated to that standard of review, and (2) the district court's decision does not properly address the children's best interests. We affirm.

## FACTS

Appellant-mother Christie Jo Ruff and respondent-father Jesse Eugene Schultz are the parents of two minor children, A.S. born in 2009, and Z.S., born in 2010. Mother also has an infant son with her fiancé. In November 2013, the parties stipulated to a parenting plan that awarded the parties joint legal custody and mother sole physical custody. The parenting plan states that the custody designations are "[s]olely for enforcement of the final judgement and decree where this designation is required for that enforcement and for no other purpose or legal effect under the laws of this state, any other state, or another country." *See* Minn. Stat. § 517.1705, subd. 4 (Minn. 2014) (governing parenting-plan custody designations). Under the parenting plan, during every 14-day period, the children spent eight overnights with mother and six overnights with father. The parenting plan did not designate a primary residence and instead provided that the children's residence would be shared between both parents' homes.

The parenting plan states:

> No later than the summer of 2014, the parties shall engage the services of a parenting consultant to decide where [the children] attend school. The parenting consultant shall be appointed by separate order, with each party responsible for one-half the cost. The parenting consultant shall have the authority to modify the parties' parenting time schedule in whatever manner found to be in the children's best interests. The label of sole physical custody, given to Mother pursuant to Minn. Stat. § 518.1705 Subd. (4), shall not inhibit the

2

parenting consultant from recommending the parenting schedule she/he finds is in the children's best interests.

Father lives in Otsego, Minnesota, in the same house where he has lived for over 11 years. In January 2014, mother moved from Burnsville, Minnesota to Willow River, Minnesota, which is about 100 miles away from Otsego. Mother lives with her fiancé, who is gone for two out of every three weeks for work.

The parties were unable to agree on whether the children will attend school in Otsego or Willow River and, in March 2014, stipulated to the appointment of Jennifer E. Joseph as parenting consultant. The parties stipulated to review of the parenting consultant's decision by the district court under an abuse-of-discretion standard.

The parties identified the following criteria to be considered in deciding where the children will attend school: school in a location providing a safe environment; teacher qualifications; diversified programming (art, music, sports); how the school district handles problems if the problems are not appropriately handled at the individual school level; school/district graduation rates; surroundings with active, intelligent children with involved parents; school's policy regarding peer relationships, for example, how they handle bullying issues; and "[n]ext school availability in district." The parenting consultant made detailed findings on these factors. The parenting consultant found that the diversified-programming factor favored Otsego because "Otsego offers a significantly wider range of diversified programming, including art, and a broad range of specialized programming for students requiring special services." The parenting consultant found that the data were insufficient to determine whether the district's handling of problems at

3

the district level favored either school. The parenting consultant found that the other factors identified by the parties did not favor either school.

In addition to the factors identified by the parties, the parenting consultant considered logistics. The parenting consultant found:

> Willow River Elementary School is approximately 9.4 miles from [mother's] residence, or approximately 15 minutes by car. [Mother] reports she will drive the children to and from school, rather than relying on bus[]ing. However, as [A.S.] enters kindergarten, [mother] still has two other children to care for: [Z.S.], and her newborn son . . . (born 05/24/2014). In addition, [mother's] boyfriend . . . works in the oil industry in North Dakota. His schedule requires him to be in North Dakota to work a three week schedule, where he is on for fourteen consecutive days, and off for seven. This will require [mother] to manage three young children, and to consistently get [A.S.] to school as a single parent two out of every three weeks. Moreover, her home is in a remote location, with several miles of unpaved roads between her and Willow River. She reports she has trouble managing the children's behavior at times. She has not identified a contingency plan for ensuring [A.S.] gets to school consistently during times [her boyfriend] is working and she is without support.

> In contrast, [father's] home is .5 miles from Otsego Elementary School, or 1 minute by car. He indicates he intends to transport the children to and from school when he is available. When he is working, he indicates his girlfriend is available for transportation, or, in the alternative, he has several neighbors with children at Otsego Elementary School. [Father] notes that [A.S.] can either carpool with the neighbors to and from school, or wait with them before and after school and ride the bus.

> This factor favors Otsego.

The parenting consultant also made detailed findings on the statutory best-interests factors.

The parenting consultant decided that the children's best interests would be served by attending school in Otsego and designated the children's primary residence as Otsego for the purpose of school enrollment. The parenting consultant modified the parenting-time schedule by granting father parenting time from 6:00 p.m. Sunday until 6:00 p.m. Friday and the third weekend of every month and the fifth weekend in months with five weekends and mother parenting time the first, second, and fourth weekends of every month during the school year. The schedule is reversed during the summer months.

Mother moved the district court to vacate the parenting consultant's decision, to order her home the children's primary residence during the 2014-2015 school year, to order the Willow River school district the children's school district for the 2014-2015 school year, and to appoint a guardian ad litem to determine father's parenting time. Father moved the court to deny mother's motions and sustain the parenting consultant's decision. The district court found that the record was unclear why mother chose to move to Willow River, that the main concern was the lack of a reason for mother to move so far away, that mother continued to separate the children from father and tried to limit their contact with him, and that the parenting consultant thoroughly analyzed the best-interests factors and did not abuse her discretion. The district court adopted the parenting consultant's report, granted father's motions, and denied mother's motions.[1]

This appeal followed.

---

[1] The order incorrectly states that it granted "respondent's" motions and denied "petitioner's" motions. In the district court, mother was the respondent, and father was the petitioner.

5

**DECISION**

This court reviews a district court's custody determinations for an abuse of discretion. *Goldman v. Greenwood,* 748 N.W.2d 279, 281-82 (Minn. 2008); *see also Novak v. Novak,* 446 N.W.2d 422, 424 (Minn. App. 1989) ("The law makes no distinction between general determinations of custody and resolution of specific issues of custodial care."), *review denied* (Minn. Dec. 1, 1989). "A district court abuses [its] discretion by making findings unsupported by the evidence or improperly applying the law." *Hagen v. Schirmers,* 783 N.W.2d 212, 215 (Minn. App. 2010). We review factual findings under a clearly-erroneous standard and defer to the district court's credibility determinations. *Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn. 1988).

**I.**

The term "parenting consultant" is not used in the Minnesota statutes, but in practice refers to "a creature of contract or of an agreement of the parties which is generally incorporated into . . . a district court's custody ruling." *Szarzynski v. Szarzynski,* 732 N.W.2d 285, 293 (Minn. App. 2007). Stipulations in divorce proceedings are favored by courts "as a means of simplifying and expediting litigation" and "are therefore accorded the sanctity of binding contracts." *Shirk v. Shirk,* 561 N.W.2d 519, 521 (Minn. 1997). But the interests of children are "nonbargainable" and "less subject to restraint by stipulation." *Kaiser v. Kaiser*, 290 Minn. 173, 180, 186 N.W.2d 678, 683 (1971) (stated in context of child-support requirements).

"Upon the request of both parents, a parenting plan must be created in lieu of an order for child custody and parenting time unless the court makes detailed findings that

6

the proposed plan is not in the best interests of the child." Minn. Stat. § 518.1705, subd. 3(a) (2014). "A parenting plan must include . . . a method of dispute resolution." *Id.*, subd. 2(a)(3) (2014). In the parenting plan, the parties stipulated that disputes with respect to school choice would be submitted to a parenting consultant for determination and authorized the parenting consultant to modify the parenting-time schedule when making that determination "in whatever manner found to be in the children's best interests." When the parenting consultant was appointed, the parties stipulated to review of her decision by the district court under an abuse-of-discretion standard.

Mother argues that the stipulation to the standard of review should be held unenforceable because it "could prevent the [district] court from guarding the children's best interests." Parents who have joint legal custody have "equal rights and responsibilities, including the right to participate in major decisions determining the child's upbringing, including education." Minn. Stat. § 518.003, subd. 3(b) (2014). When joint legal custodians cannot agree on which school their child should attend, the district court must resolve the dispute based on the child's best interests. *Novak,* 446 N.W.2d at 424-25.

Although mother is correct that school attendance must be determined based on the children's best interests, she is incorrect that the stipulated standard of review does not protect those interests. Consistent with Minnesota law, the parenting plan requires that the parenting consultant determine school attendance based on the children's best interests. An improper application of the law is an abuse of discretion. *Hagen*, 783 N.W.2d at 215. Therefore, if the parenting consultant's determination of school

7

attendance was not in the children's best interests, the decision would have been an abuse of discretion, and the district court could not have adopted it.

## II.

Mother argues that the district court's decision does not properly address the children's best interests. She argues that the district court improperly considered the quality of schools and the distances from the parents' homes to the schools, which are not statutory best-interests factors.[2] But "'[t]he best interests of the child' means all relevant factors to be considered and evaluated by the court," including 13 specific factors identified in the statute. Minn. Stat. § 518.17, subd. 1(a) (2014). The parties stipulated to consideration of criteria related to school quality, and the only criterion found by the district court to favor Otsego was the wider range of diversified programming offered, which was relevant to the children's best interests. The district court considered location as related to the logistics of getting the children to school, which also was relevant to their best interests.

Mother argues that the district court incorrectly found that mother's infant son was a factor weighing against her. The district court considered mother's responsibilities to Z.S. and the infant in addressing the logistics of getting A.S. to school. In analyzing the children's best interests, the district court found that both Z.S. and A.S. were very interested in their younger sibling and respectful of his belongings and that A.S. was

---

[2] Because the district court adopted the parenting consultant's order, the parenting consultant's findings are referred to as the district court's findings.

interested in helping with feedings. These findings do not show that mother's infant son was a factor weighed against mother.

Mother also disputes the district court's findings on several of the statutory best-interests factors under Minn. Stat. § 518.17, subd. 1. We address each factor briefly.

*Primary caretaker*

Based on her affidavit, mother argues that the district court erred in finding that since August 2013, both parties have performed the tasks typically associated with the primary-caretaker role. This court defers to the district court's credibility determinations. *Sefkow*, 427 N.W.2d at 210. Since August 2013, the children have spent almost equal time with father and mother.

*Intimacy of relationship between each parent and the children*

Mother argues that she shares a stronger bond with the children. The district court's finding that "[b]oth parents appear to enjoy close and intimate relationships with the children" was based on the parenting consultant's observations during visits to both parties' homes.

*Interaction and interrelationship of children with parents and others*

Mother argues that the district court did not address the emotional bond between the children and other individuals. The court found that the children sought comfort and assistance from father's girlfriend and mother's fiancé and were responsive to limits set by them. The court also addressed the relationship between the children and mother's infant son. Mother argues that the district court erred in failing to consider the children's

9

relationship with their maternal grandmother but cites no evidence that attending school in Otsego will limit the grandmother's role in the children's lives.

*Children's adjustment to home, school, and community*

Mother argues that the district court erred in not finding that the children are integrated into the Willow River community. The district court's consideration of this factor was based on the length of time the children have been in the Willow River community. Until January 2014, the children resided in the Otsego and Burnsville communities.

*Length of time child has lived in stable, satisfactory environment and desirability of maintaining continuity*

The district court found that father's girlfriend is a relatively stable presence in the children's lives, that mother's fiancé is a relatively inconsistent presence due to his work schedule, and that the new baby contributed to the instability of mother's home environment. Mother's fiancé's work requires him to be gone two out of every three weeks, leaving mother without help in caring for A.S., Z.S., and the infant.

*Permanence, as a family unit, of existing or proposed custodial home*

The district court found that both mother and father are in committed relationships and intend to remain in their current homes for the foreseeable future.

*Mental and physical health of all individuals involved*

Mother argues that the district court should have held an evidentiary hearing instead of adopting the parenting consultant's finding that there are issues regarding the parties' and the children's mental health. The parenting consultant explained in detail her

10

concerns regarding the parties' and children's mental health. Mother declined a custody evaluation or focused assessment. Father was participating in counseling, but mother was not.

*Capacity and disposition of parties to give child love, affection, and guidance and to continue educating and raising child in child's culture and religion or creed if any*

The district court found:

> Both parents clearly love the children, and both purport to want what is best for them. Both parents demonstrate some measure of parental warmth, and were affectionate with the children both during the home visits, and during the MIM Assessment . . . . However, . . . there is significant concern regarding overall parenting skills for both parents. Both parents report troubling behaviors when the children are in their care. Both parents are quick to blame the other parent's lack of skill for the children's issues, but both also demonstrate difficulty setting and enforcing appropriate limits for the children. [Mother] and [father] each demonstrate an egregious lack of insight regarding their own parenting deficits.

*Effect on child of actions of an abuser, if related to domestic abuse, as defined in section 518B.01*

Mother argues that she raised "grave concerns" regarding alleged verbal, emotional, and physical abuse by father. The district court noted mother's concerns but found that the record was insufficient to show domestic abuse.

*Disposition of each parent to encourage and permit frequent and continuing contact by the other parent with the child*

The district court noted concerns raised by both parties and found that "[b]oth parents express a desire for the children to have a relationship with the other parent, and

11

state they are willing to facilitate ongoing contact with the other parent" but that "their actions tend to indicate otherwise.

*Statutory requirements.*

Finally, mother contends that the district court erred in not complying with the requirements of Minn. Stat. § 518.18 (2014), as to modification of the original parenting plan. The parties' stipulated parenting plan provides for the determination of school attendance based on the children's best interests. That stipulation is enforceable under Minn. Stat. § 518.1705, subd. 9 (2014), which allows parties to agree to application of the best-interests standard instead of Minn. Stat. § 518.18(d) when deciding a modification motion.

The district court's findings on the children's best interests are supported by evidence in the record and are not clearly erroneous, and those findings support the determination that attending school in Otsego is in the children's best interests.

**Affirmed.**